# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 18, 2012

Lyle W. Cayce
Clerk

No. 10-20436

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

RAFAEL E RIVAS-LOPEZ,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Rafael E. Rivas-Lopez ("Rivas"), federal prisoner # 16285-179, contends that he received ineffective assistance of counsel when his attorney overestimated his sentencing exposure under a proffered plea deal, leading him to reject the deal and stand trial. The district court rejected this argument. For the reasons that follow, we vacate the district court's order with respect to this issue and remand for an evidentiary hearing.

## I.

A jury convicted Rivas of one count of conspiracy to commit hostage taking, four counts of hostage taking, four counts of aiding and abetting the harboring of illegal aliens for the purpose of commercial advantage and private financial

gain, and four counts of aiding and abetting the transportation of illegal aliens for the purpose of commercial advantage and private financial gain. A probation officer assessed a base offense level of 32 and added 4 levels under the grouping rules.[1] The officer originally assessed an additional 6-level increase based on a finding that ransom demands were part of the scheme,[2] but Rivas objected, pointing to earlier sentencing hearings for his codefendants in which the district court determined that the evidence did "not clearly show that ransom demands were made for the release of each of the smuggled aliens." The officer ultimately reversed course, recommending against the 6-level ransom enhancement. In total, then, the ultimate presentence report ("PSR") recommended that Rivas's offense level was 36, which, when combined with his criminal history category of I, resulted in a Guidelines imprisonment range of 188 to 235 months.[3] The district court sentenced Rivas to a total of 188 months of imprisonment. This Court affirmed Rivas's conviction and sentence, and the Supreme Court denied certiorari.[4]

Rivas then filed a § 2255 motion raising several claims of ineffective assistance of counsel. The only claim at issue here is that his counsel erroneously advised him that if he pleaded guilty he would face a prison term in the range of 262 to 327 months based on an offense level of 39. According to the district court, counsel derived the offense level of 39 from a base offense level of 32;[5] enhancements for making ransom demands (6 levels),[6] serious bodily injury

---

[1] U.S.S.G. § 3D1.4 (2004).

[2] *Id.* § 2A4.1(b)(1).

[3] *Id.* ch. 5, pt. A (sentencing table).

[4] *United States v. Calderon-Lopez*, 268 F. App'x 279 (5th Cir.) (unpublished), *cert. denied*, 555 U.S. 860 (2008).

[5] U.S.S.G. § 2A4.1(a).

[6] *Id.* § 2A4.1(b)(1).

suffered by a victim (2 levels),[7] and use of a dangerous weapon (2 levels);[8] as well as a 3-level reduction for acceptance of responsibility.[9]

Rivas asserts in his brief and affidavit that the Government offered a plea bargain that would have required him to plead guilty to only one count but that he rejected the agreement because his attorney advised that he would receive a 21-year sentence if he accepted it.  He faults counsel for failing to examine or weigh potential objections to the sentencing enhancements.  He also maintains that he would have accepted the Government's offer and pleaded guilty if he had known that his sentencing exposure was potentially lower than what counsel advised and that he did not face what he believed was a "mandatory minimum" prison sentence of 262 months.

The district court denied the § 2255 motion without holding an evidentiary hearing.  It concluded that "Rivas does not show that counsel's performance was deficient, or that he was actually prejudiced as a result."[10]  It determined that the attorney's estimate of the sentence was not unreasonable or erroneous "[b]ased on the evidence of Rivas' involvement and his conduct during the offense."[11]  Even if counsel's calculations were incorrect, according to the district court, counsel did not substantially misstate Rivas's sentencing exposure because the estimate was not grossly inaccurate and did not substantially misstate the Guidelines range,[12] noting that two of Rivas's codefendants received

---

[7] *Id.* § 2A4.1(b)(2)(B).

[8] *Id.* § 2A4.1(b)(3).

[9] *Id.* § 3E1.1.

[10] *United States v. Rivas-Lopez*, Nos. 4:04-CR-145-2, 4:09-CV-3335, 2010 WL 1782234, at *10 (S.D. Tex. Apr. 30, 2010).

[11] *Id.* at *8.

[12] *Id.* at *9.

total offense levels of "at least 41" and another received a 40.[13]  Also, because Rivas admitted that he did not wish to provide assistance to the Government, the court reasoned, Rivas could not show that he would have accepted the plea agreement but for counsel's sentencing advice.[14]  Moreover, the court explained, Rivas could not establish that he would have received a less severe sentence if he had pleaded guilty because he could not show that the enhancements counsel factored into the offense-level calculation would not have applied to him.[15]

The district court denied a certificate of appealability (COA).[16]  Rivas filed a timely notice of appeal.  This Court granted a COA on the issue "whether trial counsel performed deficiently by overestimating Rivas's Guidelines range and whether it is reasonably probable that Rivas would have pleaded guilty had he known the correct guidelines range and that a guilty plea would have reduced his sentence."  The Court also granted a COA as to whether the district court should have held an evidentiary hearing.

## II.

In the 28 U.S.C. § 2255 context, this Court reviews the district court's legal conclusions de novo and its factual findings for clear error.[17]  The district court's decision to deny the ineffective assistance of counsel claim poses mixed questions of law and fact, and this Court reviews those issues de novo.[18]

## III.

---

[13] *Id.* at *9 n.4.

[14] *Id.* at *9.

[15] *Id.*

[16] *Id.* at *13.

[17] *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008).

[18] *United States v. Culverhouse*, 507 F.3d 888, 892 (5th Cir. 2007).

"[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."[19] Indeed, this Circuit has observed that providing counsel to assist a defendant in deciding whether to plead guilty is "'[o]ne of the most precious applications of the Sixth Amendment.'"[20] When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice.[21] Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance.[22]

The Supreme Court recently affirmed this Circuit's case law, holding that the Sixth Amendment protects against, and remedies, the rejection of favorable plea offers for want of effective assistance of counsel.[23]

An attorney renders constitutionally ineffective assistance where his performance was deficient and prejudiced the defense.[24] To establish an ineffective assistance claim, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's poor performance the result of the proceeding would have been different.[25] For the deficiency prong, counsel's performance is

---

[19] *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010).

[20] *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) (alteration in original) (quoting *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965)).

[21] *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995) (a 28 U.S.C. § 2254 case).

[22] *United States v. Ridgeway*, 321 F.3d 512, 514 (5th Cir. 2003), *abrogated on other grounds as recognized in Grammas*, 376 F.3d at 438.

[23] *Lafler v. Cooper*, No. 10-209, 2012 WL 932019 (U.S. Mar. 21, 2012) (citing *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. Unit B Mar. 1981)); *see also Missouri v. Frye*, No. 10-444, 2012 WL 932020 (U.S. Mar. 21, 2012) (holding that the Sixth Amendment also extends to plea offers that lapse due to ineffective assistance of counsel).

[24] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[25] *Id.* at 688, 694.

to be accorded "'a heavy measure of deference.'"[26]  To meet the prejudice prong, Rivas must show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."[27]  Any amount of additional jail time is significant for purposes of showing prejudice.[28]

Counsel does appear to have overestimated the sentence Rivas would have received if he had pleaded guilty.  After a jury convicted Rivas of 13 counts, his 188 to 235 month imprisonment range was calculated using a base offense level of 32 and adding four levels under the Guidelines' grouping rules.  If instead Rivas had pleaded guilty to a single count, it stands to reason that his base offense level would likewise have been 32 and that the grouping rules would not have applied.

Under certain conditions, a defendant is entitled to a three-level reduction of his base offense level for acceptance of responsibility.[29]  Rivas asserted in the district court that as part of the proposed plea offer, the Government promised not to object to a three-level reduction for acceptance of responsibility.  Rivas

---

[26] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1408 (2011) (quoting *Strickland*, 466 U.S. at 691).

[27] *Cooper*, slip op. at 5, 2012 WL 932019, at *5; *accord Frye*, slip op. at 11, 2012 WL 932020, at *9; *Grammas*, 376 F.3d at 438 (requiring the defendant, in order to demonstrate prejudice, to show that there was a reasonable probability (1) that he would have pleaded guilty but for counsel's ineffective assistance and (2) that the plea would indeed have reduced the sentence).

[28] *Grammas*, 376 F.3d at 439 (citing *Glover v. United States*, 531 U.S. 198, 203 (2001)).

[29] *See United States v. Wheeler*, 322 F.3d 823, 826 (5th Cir. 2003) (per curiam); U.S.S.G. § 3E1.1.

then would have reduced his offense level to 29 by accepting the Government's offer and pleading guilty.

With a criminal history category of I and a total offense level of 29, Rivas's Guidelines range would have been 87 to 108 months of imprisonment.[30] According to Rivas, counsel estimated that if he were to plead guilty, he would face a sentencing range of 262 to 327 months, which therefore would have been inaccurate by 154 to 240 months.[31]

But then again, one can argue, as the Government does, that the facts in the PSR could have supported a higher Guidelines range, in line with the range calculated by defense counsel. It is unclear what information counsel knew about Rivas's conduct when he calculated Rivas's sentencing exposure. Counsel did not describe his reasoning in his affidavit, and to the extent that he did, he inexplicably avers to an offense level of 41. According to the PSR, Rivas carried a firearm during the offense, which potentially could have resulted in a two-level increase.[32] Causing serious bodily injury also carries a two-level increase, and at least one victim was beaten, though it does not appear that Rivas was directly involved.[33] As for the potential six-level increase for making a ransom demand, at least some of Rivas's codefendants did not receive that enhancement, though there was evidence that the victims' families were asked to provide money for their relatives' release.[34] As the Government argues, these enhancements might have been relevant to Rivas's situation; however, he did not actually receive any of them after a full investigation of all of the facts and the applicable Guidelines

---

[30] U.S.S.G. ch. 5, pt. A (sentencing table).

[31] *Cf. United States v. Herrera*, 412 F.3d 577, 581 (5th Cir. 2005) (determining that a misstatement of a sentencing range by 27 months would be enough to be deficient performance).

[32] U.S.S.G. § 2A4.1(b)(3).

[33] *Id.* § 2A4.1(b)(2)(B).

[34] *Id.* § 2A4.1(b)(1).

by the probation officer. Nothing in the record suggests that he was more likely to receive the enhancements if he had pleaded guilty than if, as here, he were found guilty by a jury.

In sum, on the bare record before us, counsel's calculation of the Guidelines range for the plea offer significantly overstated Rivas's actual sentencing exposure. But we can neither credit nor refute Rivas's allegation of ineffective assistance on this record. To determine both deficiency and prejudice, we would benefit from additional facts that should be determined at an evidentiary hearing in the district court.

A district court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[35] The record of this case does not so conclusively show. Rivas and counsel's representations conflict as to whether Rivas would have pleaded guilty if counsel had advised that Rivas faced a lower sentence and not a mandatory 21-year sentence based on enhancements Rivas "would receive." They also conflict as to whether Rivas's reluctance to cooperate with the Government impacted the plea discussions[36] and whether Rivas was told that any best Guidelines outcome, even with a plea, would give him 21 years in prison. Moreover, the record is silent as to how counsel determined which enhancements would apply, whether counsel investigated or weighed possible objections to those enhancements, and what information counsel knew about Rivas's conduct at the plea offer stage. Though the district court referenced the offense levels of three of Rivas's codefendants and the sentence another received, it is unclear

---

[35] 28 U.S.C. § 2255(b); *see United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam).

[36] Though the district court determined that Rivas would not have pleaded guilty, that determination was based on Rivas's concession that he had no intention of assisting the Government in prosecuting his codefendants. There is no suggestion that cooperation was a condition of the proffered plea offer. To the contrary, Rivas argued in the district court that the plea offer was not conditioned on any type of cooperation with the Government.

how their offense levels and Guidelines sentencing ranges were calculated and how their ultimate sentences were determined. Also, under the Supreme Court's recently announced test for prejudice in these circumstances, there is a burden on Rivas to show that there was a reasonable probability that the prosecution would not have withdrawn the plea offer and that the court would have accepted its terms.[37]

In light of the conflicting accounts by Rivas and counsel and the incomplete record on other relevant factors, the district court should have held an evidentiary hearing before dismissing the § 2255 application.[38] We of course have the benefit of a Supreme Court decision that the district court did not have. It is now plain that remanding "will allow the district court to develop a complete record, make appropriate fact findings, and grant relief in the first instance if evidence supports [Rivas's] contentions."[39] If the district court decides that relief is merited, the form that relief takes shall be informed by the Supreme Court's recent discussion of appropriate remedies in circumstances like these.[40]

IV.

_____

[37] *See Lafler v. Cooper*, No. 10-209, slip op. at 15-16, 2012 WL 932019, at *12 (U.S. Mar. 21, 2012) (applying the prejudice standard); *Missouri v. Frye*, No. 10-444, slip op. at 13-15, 2012 WL 932020, at *11 (U.S. Mar. 21, 2012) (same); sources cited *supra* note 27 and accompanying text (articulating the prejudice standard).

[38] *See United States v. Herrera*, 412 F.3d 577, 582 (5th Cir. 2005) (remanding for an evidentiary hearing on whether counsel performed deficiently); *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004) (remanding for an evidentiary hearing on the issue of prejudice).

[39] *Herrera*, 412 F.3d at 582.

[40] *See Cooper*, slip op. at 11-13, 16, 2012 WL 932019, at *10-11, *12 (discussing "the question of what constitutes an appropriate remedy"). To facilitate the orderly growth of post-*Cooper* law, we note that plea *discussions* that ripen into plea *offers*, and then in turn, are accepted, rejected, or deferred as plea *agreements* by a district court (or properly withdrawn by a defendant), should be memorialized in writing as soon as practicable. *See* 9 U.S. Attorneys' Manual § 27.450(A) (1997) ("All negotiated plea agreements to felonies or to misdemeanors negotiated from felonies shall be in writing and filed with the court.").

For the foregoing reasons, we VACATE the district court's order with respect to the claim of ineffective assistance during plea negotiations and REMAND this cause for further proceedings, to include an evidentiary hearing, consistent with this opinion. We express no view on what decisions the district court should make on remand after a hearing.