## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60133

United States Court of Appeals
Fifth Circuit

**FILED**

February 8, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

TERRY KELLY, Also Known as T.K.,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

Before SMITH, DUNCAN, and ENGELHARDT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Terry Kelly pleaded guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and enhanced per the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) (2012). As part of his plea agreement, Kelly agreed to an appeal waiver, yet he appeals.

Kelly raises two issues. First, he asserts that the district court plainly erred in applying the ACCA enhancement because he lacks the requisite

number of violent felony predicates.  Second, he claims that he received ineffective assistance of counsel ("IAC"), resulting in an increased term of imprisonment.  Because Kelly's ACCA enhancement claim is barred by his appeal waiver and his IAC claim is not ripe for review on direct appeal, we dismiss the appeal as to both claims.

## I.

Police searched Kelly's house after receiving information that stolen property might be there.  During the search, officers discovered that Kelly, a convicted felon, was in possession of two rifles, hence the indictment.[1]

Kelly and his lawyer signed a plea agreement in which he agreed to plead guilty to the one-count indictment in exchange for the government's agreement "not to charge [him] with any other offenses known by the [g]overnment arising from or related to the above charges."  As part of the deal, Kelly agreed to a waiver of appeals and collateral attacks, which stated,

> WAIVER OF APPEALS AND COLLATERAL ATTACKS:  Defendant hereby expressly waives any and all rights to appeal the conviction in this case, on any ground whatsoever, including but not limited to the grounds set forth in 18 U.S.C. § 3742.  Defendant also hereby expressly waives all rights to contest or collaterally attack the conviction in any post-conviction proceeding, including but not limited to a motion brought pursuant to 28 U.S.C. § 2255, excepting only allegations of ineffective assistance of counsel and prosecutorial misconduct.  Defendant waives these rights in exchange for the concessions and recommendations made by the United States in this plea agreement.

The district court held a Rule 11 plea hearing.  In addition to discussing the charge and the related enhancement, the court emphasized Kelly's appeal

---

[1] *See* 18 U.S.C. §§ 922(g)(1), 924(e).  The indictment listed three of Kelly's previous felony convictions, including burglary of a dwelling, burglary, and shooting into an occupied dwelling.

No. 17-60133

waiver: "[D]o you, in particular, understand that by entering into the Plea Agreement and entering a guilty plea, you will waive all rights to appeal your conviction on any ground and to collaterally attack your conviction except for allegations of ineffective assistance of counsel and prosecutorial misconduct?" Kelly answered in the affirmative ("Yes, ma'am."), acknowledging that he understood his plea agreement and the related appeal waiver.

After the guilty plea, the government filed a U.S.S.G. § 5K1.1 motion on behalf of Kelly for his substantial assistance with a RICO investigation against the Aryan Brotherhood of Mississippi.[2]   The district court granted the § 5K1.1 motion and imposed a 100-month term of imprisonment plus five years of supervised release.  The sentence imposed was below both the ACCA minimum of fifteen years and the recommended guideline range of 180 to 188 months. At sentencing, Kelly again affirmed that he "expressly waive[d] any and all rights" to appeal or collaterally attack "the conviction or sentence imposed . . . except [as] to claims relating to prosecutorial misconduct and ineffective assistance of counsel relating to the validity of the waiver of appeal or the validity of the guilty plea itself."

After sentencing, however, Kelly raised an IAC claim, which prompted his trial counsel to withdraw.  This court assigned the Federal Public Defender to represent Kelly on appeal and granted Kelly's unopposed motion for leave to file an untimely notice of appeal.

## II.

Kelly raises two issues on appeal.  First, he asserts that the district court

---

[2] In its § 5K1.1 motion, the government noted that, *inter alia*, "Kelly showed courage by sitting on the stand across from two individuals who had the authority within [the Aryan Brotherhood of Mississippi] to order that he be killed.  And he testified truthfully and provided the government with substantial assistance . . . in secur[ing] conviction at that trial for the two defendants who [Kelly] testified against."

plainly erred in applying the ACCA enhancement.  Second, he claims IAC. Before analyzing either claim, we must address the applicability and scope of the appeal waiver.

### A.

"This court reviews *de novo* whether an appeal waiver bars an appeal." *United States v. Keele*, 755 F.3d 752, 754 (5th Cir. 2014).  "A criminal defendant may waive his statutory right to appeal in a valid plea agreement."  *United States v. Pleitez*, 876 F.3d 150, 156 (5th Cir. 2017).  When deciding "whether an appeal of a sentence is barred by an appeal waiver provision in a plea agreement, we conduct a two-step inquiry: (1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement."  *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005).

For a waiver to be knowing and voluntary, "[a] defendant must know that he had a 'right to appeal his sentence and that he was giving up that right.'"  *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994) (quoting *United States v. Melancon*, 972 F.2d 566, 568 (5th Cir. 1992)).  Moreover, "[a] waiver is both knowing and voluntary if the defendant indicates that he read and understood the agreement and the agreement contains an 'explicit, unambiguous waiver of appeal.'"  *Keele*, 755 F.3d at 754 (quoting *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005)).  But, as acknowledged in the plea agreement, "a defendant may always avoid a waiver on the limited grounds that the waiver of appeal itself was tainted by [IAC]."  *United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002).

"We apply normal principles of contract interpretation when construing

plea agreements."[3]   When determining "whether an appeal waiver applies to the issues presented, this [c]ourt 'ascertain[s] the ordinary meaning of the waiver provision,'" *Pleitez*, 876 F.3d at 156 (quoting *United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011)), and "construe[s] appeal waivers narrowly . . . against the government," *id.* (quoting *United States v. Palmer*, 456 F.3d 484, 488 (5th Cir. 2006)).   Nonetheless, "[t]he government has a strong and legitimate interest in both the finality of convictions and in the enforcement of plea bargains." *United States v. Dyer*, 136 F.3d 417, 429 (5th Cir. 1998).

## B.

With respect to his ACCA claim, Kelly concedes in his reply brief that "there is a strong presumption for finding the waiver enforceable, as he . . . knowingly and voluntarily plea[ded] guilty and the language in the plea is sufficiently clear."   Kelly, however, tempers this admission by further asserting that "he would not have [pleaded] guilty had he known there was a potential challenge" to the ACCA enhancement under recent Supreme Court caselaw. Accordingly, Kelly contends that he "knowingly and voluntarily agreed to plead guilty, but only under the premise that there were no meritorious arguments to be made regarding the ACCA enhancement."

In response, the government asserts that the waiver (1) was knowing and voluntary and (2) bars the ACCA issue Kelly raises on appeal.  The government maintains that "[w]here the plea agreement contains an unambiguous waiver signed by the defendant, and the defendant states during the Rule 11 plea colloquy that he has read and understood [the] agreement, the waiver is considered knowing and voluntary."   The government further asserts that

---

[3] *McKinney*, 406 F.3d at 746; *see also United States v. Cantu*, 185 F.3d 298, 304 (5th Cir. 1999) ("[W]e apply general principles of contract law in order to interpret the terms of the plea agreement.").

No. 17-60133

Kelly knew that "he had a right to appeal his sentence and that he was giving up that right" (quoting *Portillo*, 18 F.3d at 292).  The government posits that "[i]t is plain, based on his signing the plea agreement and his two declarations to the district judge, that Kelly was well aware of his right to appeal and voluntarily waived that right."[4]

Turning to the second prong, the government claims that "[Kelly's] challenge to the ACCA enhancement is clearly barred because it does not fall within the Fifth Circuit's exceptions to enforcement of a validly executed waiver."[5]  Consequently, the waiver is enforceable and bars Kelly's appeal of this issue.

We must determine whether Kelly's waiver was knowing and voluntary and "whether the waiver applies to the circumstances at hand, based on the plain language of the plea agreement." *McKinney*, 406 F.3d at 746.  The waiver says that "[d]efendant hereby expressly waives any and all rights to appeal the conviction in this case, on any ground whatsoever . . . ."[6]  At the plea hearing, the court asked Kelly whether he "underst[ood] that by entering into the Plea Agreement and entering a guilty plea, [he] waive[d] all rights to appeal [his] conviction on any ground and to collaterally attack [his] conviction except for allegations of ineffective assistance of counsel and prosecutorial misconduct."[7]  Kelly replied, "Yes, ma'am."

---

[4] *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

[5] The government concedes, however, that Kelly's IAC claim is not barred by this court's precedent, but "only to the extent that his claim challenges the validity of [the] waiver."

[6] The waiver further states that "[d]efendant waives these rights in exchange for the concessions and recommendations made by the United States in this plea agreement."

[7] Kelly also answered affirmatively when asked whether he "underst[ood] the terms of the Plea Agreement and the Plea Supplement."

No. 17-60133

At the sentencing hearing, the court again discussed, at some length, the scope and terms of Kelly's appeal waiver, stating,

> The defendant expressly waives any and all rights to appeal the conviction or sentence imposed in this case, pursuant to his Plea Agreement, and the manner in which sentence was imposed on any ground whatsoever, including, but not limited to, the grounds set forth in [18 U.S.C. § 3742] except [as] to claims relating to prosecutorial misconduct and [IAC] relating to the validity of the waiver of appeal or the validity of the guilty plea itself. The defendant also expressly waives all rights to contest or collaterally attack the conviction and/or sentence and the manner in which the sentence was imposed in any post-conviction proceeding, including, but not limited to, a motion brought pursuant to [28 U.S.C. § 2255] except [as] to claims relating to prosecutorial misconduct and [IAC] relating to the validity of the waiver of appeal or the validity of the guilty plea itself.

The district court next asked Kelly whether he understood his sentence as specified by the court. Again, Kelly affirmatively acknowledged his understanding of the sentence (including the related terms of his plea agreement) by stating "Yes, ma'am."[8]

Kelly's waiver was both knowing and voluntary because the record demonstrates that "he [both] read and understood the agreement, which include[d] an explicit, unambiguous waiver of appeal." *Bond*, 414 F.3d at 544; *see also Keele*, 755 F.3d at 754–56; *McKinney*, 406 F.3d at 746. Moreover, the waiver applies to all of Kelly's potential claims—including a challenge to the application of the ACCA enhancement—except those concerning prosecutorial misconduct or IAC. Accordingly, although Kelly may not pursue his ACCA claim— it is barred by the clear terms of his appeal waiver—he may appeal his IAC claim, under the terms of the plea agreement, and under this court's precedent

---

[8] Kelly also confirmed that he did not "have any questions about any matter related to [his] sentence or any part of [the sentencing] proceeding."

No. 17-60133

that "a defendant may always avoid a waiver on the limited grounds that the waiver of appeal itself was tainted by [IAC]." *White*, 307 F.3d at 339; *see also United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995).

## III.

## A.

In *Strickland v. Washington*, 466 U.S. 668, 687−96 (1984), the Court outlined a two-pronged test for determining whether counsel's performance was ineffective.[9]  First, "[w]hen a convicted defendant complains of [IAC], the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687−88.  Second, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute [IAC] under the Constitution." *Id.* at 692.  Nonetheless, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689.[10]  A defendant's right to effective assistance of counsel extends to the plea-bargaining process.[11]

"[A] defendant may always avoid a waiver on the limited grounds that the waiver of appeal itself was tainted by [IAC]." *White*, 307 F.3d at 339; *see also Henderson*, 72 F.3d at 465.  Nonetheless, "[t]he general rule in this circuit

---

[9] *See also Gulley*, 526 F.3d 809, 821 (5th Cir. 2008) ("A defendant's Sixth Amendment right to counsel is violated if: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.").

[10] "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Washington*, 466 U.S. at 689.

[11] *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970))); *see also Missouri v. Frye*, 566 U.S. 134, 140–44 (2012).

is that a claim of [IAC] cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Higdon*, 832 F.2d 312, 313–14 (5th Cir. 1987); *see also Gulley*, 526 F.3d at 821. Consequently, "[o]nly in those rare occasions where the record is sufficiently developed will [this] court undertake to consider claims of inadequate representation on direct appeal." *Gulley*, 526 F.3d at 821. Ultimately, unless we can "fairly evaluate the claim from the record, we must decline to consider the issue without prejudice to a defendant's right to raise it in a subsequent proceeding." *Id.*[12]

## B.

Kelly contends that "[t]his is one of those rare cases" in which the record is sufficiently developed to allow us to reach the merits of his IAC claim on direct appeal. Turning to the *Washington* factors, Kelly asserts that "[t]he mere failure [of trial counsel] to challenge [his] prior convictions post-*Johnson* and *Mathis* was deficient performance and severely prejudiced [him]." Kelly further maintains that "[f]ailing to keep current on Supreme Court cases and relevant circuit court precedent is deficient performance," especially given that both precedents "were easily accessible and gravely important to challenging the ACCA enhancement."[13] Accordingly, "[n]o sound trial strategy can be reasoned for not objecting to the [ACCA] enhancement at the infancy of the case or at sentencing," and his trial counsel's performance should be deemed deficient because "it falls below an objective standard of reasonableness."

Kelly also asserts that he was prejudiced by his counsel's deficient

---

[12] *See also United States v. Villegas-Rodriguez*, 171 F.3d 224, 230 (5th Cir. 1999) ("We do not review a claim of [IAC] on direct appeal unless the district court has first addressed it or unless the record is sufficiently developed to allow us to evaluate the claim on its merits.").

[13] Kelly notes that *Johnson* was released before both his change-of-plea hearing and sentencing, while *Mathis* was released before sentencing.

performance.  He acknowledges that he "bears the burden of demonstrating . . . 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'" (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  Kelly maintains that had the ACCA enhancement not been applied, "he would have faced a substantially lower guidelines range which would have led to a plea agreement without the ACCA enhancement."  Kelly claims that "[i]nstead of a fifteen-year mandatory minimum and a suggested [g]uidelines range of 180–188 months," he would have faced a range of 46–57 months even before the court granted the § 5K1.1 motion.[14]  Moreover, had his trial counsel been effective, "Kelly would have been able to preserve his objection to the [ACCA] enhancement," thereby also providing the benefit of *de novo*, rather than plain error, review.

In response, the government contends that the record in the district court is insufficient to determine whether trial counsel's plea strategy was sound.  Highlighting circuit precedent, the government maintains that "[i]f [this] [c]ourt cannot make the determination on the record before it, it should dismiss the claim without prejudice and allow the defendant to raise it in another proceeding where the record can be developed."  "[F]ar from being a rare case ripe for direct review," the government asserts that "Kelly's [IAC] claim begs for further factual development."

The government likewise challenges the assumption that "had [Kelly's] counsel raised the issues he now [raises] on appeal, he would have gotten a better result," contending that such an approach "overlooks a variety of

---

[14] The government disputes this claim, maintaining that "[t]here are . . . uncertainties as to what Kelly's guideline range would be if he was not a violent offender under the ACCA. Kelly recalculates his guideline range assuming that both of his violent felonies should be discounted; however, if [only] one violent felony is discounted . . . then his guideline range would be higher than he estimates."

practical considerations that may have affected his sentence." Ultimately, the government maintains that "the [c]ourt can only speculate as to why Kelly's counsel chose not to object to the ACCA enhancement" and urges that we "dismiss [the IAC] claim without prejudice [so that] Kelly [may] pursue it in the trial court."

At bottom, Kelly's IAC claim was not sufficiently developed. Although he raised the issue in a *pro se* habeas corpus petition that he filed in the district court after sentencing, the court dismissed it without prejudice for lack of jurisdiction because "Kelly's direct appeal [was] pending." The court did not hold a hearing on the claim.

Ultimately, much like the defendant in *Gulley*, Kelly's "claim is not ripe for review because 'the district court did not hold a hearing and the record does not provide sufficient detail about trial counsel's conduct and motivations to allow this court to make a fair evaluation of the merits of [his] claim.'" *Gulley*, 526 F.3d at 821 (quoting *United States v. Aguilar*, 503 F.3d 431, 436 (5th Cir. 2007)). Here, as in *Higdon*, 832 F.3d at 314, we "can only speculate on the basis for defense counsel's actions" because there is no discussion in the record concerning trial counsel's rationale for making his strategic choices, including the decision not to challenge the ACCA enhancement. Accordingly, Kelly's IAC claim is not ripe for review on direct appeal.

In sum, because Kelly's ACCA enhancement claim is barred by the appeal waiver, and his IAC claim is not ripe for review on direct appeal, the appeal is DISMISSED, but without prejudice to Kelly's right to raise IAC on collateral review. S*ee United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014).