# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 25, 2020

Lyle W. Cayce
Clerk

No. 18-11203

David Abram Anaya,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director*, *Texas Department of Criminal Justice*, *Correctional Institutions Division*,

*Respondent—Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:15-CV-234

---

Before Barksdale, Haynes, and Willett, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

David Anaya was charged with murder and aggravated assault. He rejected the State's plea deal and opted instead for a jury trial. He didn't deny that he shot the victim. He insisted instead that he fired in self-defense. But Anaya's lawyer did not tell Anaya that, because he was a felon in possession of a weapon, the jury could consider his failure to retreat under Texas law. So now Anaya brings a habeas claim for ineffective assistance of counsel. The district court denied Anaya relief. Because of the rigorous deference we owe the state court's judgment on collateral review, we AFFIRM.

I

Late one night in Potter County, Texas, a group of five teenagers heard gunshots as they were leaving a club. They ran to their car, where they found a man, beaten and bloody, leaning up against it. One of the teens threw the man off the car so they could leave.

David Anaya left the same club at about the same time. He noticed a crowd in the parking lot and saw "flashes of a gun in the air." A group was "pounding on somebody with their feet." Anaya went to investigate. By the time Anaya got close enough to the scene, he found his brother on the ground, brutally beaten, wounded, and bleeding. Anaya gathered his brother, put him in the front seat of his car, and put his brother's gun in the console. Anaya wanted to leave before police arrived because he was on parole.

While driving down Amarillo Boulevard, Anaya pulled up alongside the car full of teens from the club. One of the teens testified that Anaya accused them of attacking his brother. Anaya says that the front passenger in the other car was making "aggressive gestures" and that someone in the back seat pointed a gun at Anaya through the window. Anaya then fired his brother's gun at them, he claims, in self-defense. One of the teen passengers was struck in the temple and died. The police recovered a black toy gun from the teenagers' car, but the owner of the toy gun denied having brandished it. An investigator testified that the toy gun resembled a semi-automatic gun— its blue and orange coloring had been scratched off to make it look real.

The State offered Anaya a plea bargain: 30 years for murder and 15 years for aggravated assault. Anaya did not deny the underlying facts in the

No. 18-11203

indictment but claimed he was acting in self-defense. So Anaya's discussions with his lawyer, Rus Bailey, centered on the viability of a self-defense claim at trial. That was Anaya's only defense. The State provided Bailey with a list of Anaya's convictions and made clear it planned to use those convictions at trial to enhance Anaya's punishment. Because of those prior convictions, at the time of the shooting, Anaya was a felon in possession of a firearm. This meant that the jury could consider Anaya's failure to retreat in evaluating the reasonableness of his actions.[1]

The jury convicted Anaya of both assault and felony murder. He was sentenced to 40 and 99 years, respectively. Anaya appealed, and the state intermediate appellate court affirmed. The Texas Court of Criminal Appeals refused Anaya's petitions for review. And he did not seek certiorari from the Supreme Court of the United States.

Anaya pursued an ineffective assistance of counsel claim in three state habeas proceedings, the last dismissed as successive. The TCCA denied relief, and the Supreme Court denied certiorari.[2] All of Anaya's state habeas petitions were denied without written orders. Anaya applied to the federal district court for habeas relief.[3] The district court adopted the magistrate judge's written findings, conclusions, and recommendation—the only written opinion in Anaya's habeas proceedings—and denied a Certificate of

---

[1] Tex. Penal Code Ann. § 9.32(c), (d).

[2] *Anaya v. Texas*, 136 S. Ct. 195 (2015).

[3] *See* 28 U.S.C. § 2254.

No. 18-11203

Appealability. We granted Anaya a COA on one issue: Anaya's ineffective assistance of counsel claim that his counsel misdescribed the law of self-defense, which impaired Anaya's ability to make an informed decision on the viability of his only defense and the State's plea offer.

## II

When a state court denies a habeas application without a written order—as is the case here—that decision is an adjudication on the merits subject to deference under 28 U.S.C. § 2254(d).[4] When a district court denies a § 2254 application, we review the district court's findings of fact for clear error and its conclusions of law de novo, "applying the same standard of review to the state court's decision as the district court."[5] We also review mixed questions of law and fact de novo.[6]

To obtain relief under § 2254(d), Anaya must establish that the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[7]

---

[4] *Register v. Thaler*, 681 F.3d 623, 626 n.8 (5th Cir. 2012).

[5] *Robertson v. Cain*, 324 F.3d 297, 301 (5th Cir. 2003) (citation omitted).

[6] *Id.*

[7] 28 U.S.C. § 2254(d).

No. 18-11203

### III

The Sixth Amendment right to counsel extends to the plea-bargaining process, where defendants are "entitled to the effective assistance of competent counsel."[8] In fact, we have "observed that providing counsel to assist a defendant in deciding whether to plead guilty is 'one of the most precious applications of the Sixth Amendment.'"[9] That's because the overwhelming majority of federal and state convictions are the result of guilty pleas.[10] The Supreme Court has repeatedly reminded us that, because our criminal justice system has become "for the most part a system of pleas, not a system of trials," the "critical point for a defendant" is often plea negotiation, not trial.[11] And because "horse trading between prosecutor and defense counsel determines who goes to jail and for how long," plea bargaining "is not some adjunct to the criminal justice system; it *is* the criminal justice system."[12]

Anaya's ineffective assistance of counsel claim—based on Bailey's advice at plea bargaining—is governed by the two-part test established in

---

[8] *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

[9] *United States v. Rivas-Lopez*, 678 F.3d 353, 356 (5th Cir. 2012) (cleaned up) (quoting *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004)).

[10] *Missouri v. Frye*, 566 U.S. 134, 143 (2012) ("Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas.").

[11] *Id.* at 143–44 (quoting *Lafler*, 566 U.S. at 170).

[12] *Id.* (emphasis in original) (quoting Scott & Stuntz, *Plea Bargaining as Contract*, 101 Yale L.J. 1909, 1912 (1992)).

No. 18-11203

*Strickland v. Washington.*[13] Under *Strickland*, a defendant who claims ineffective assistance of counsel must show: (1) "that counsel's representation fell below an objective standard of reasonableness,"[14] and (2) that the deficiency was "prejudicial to the defense."[15] The inquiry is highly deferential to counsel.[16] And in the habeas context, we do not start with a clean slate but must give deference to the state court under § 2254(d).[17] We address each *Strickland* prong in turn, applying the requisite "doubly deferential" standard of review "that gives both the state court and the defense attorney the benefit of the doubt."[18]

## A

First, the performance prong. To show deficient performance under *Strickland*, Anaya must show that Bailey "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[19] We must "indulge a strong presumption that counsel's conduct falls within

---

[13] *See id.* at 140.

[14] 466 U.S. 668, 688 (1984).

[15] *Id.* at 692.

[16] *Id.* at 690 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."); *see also Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

[17] *See Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (citing *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

[18] *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (citation omitted).

[19] *United States v. Kayode*, 777 F.3d 719, 723 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687).

6

the wide range of reasonable professional assistance."[20] But counsel's "[s]ilence" "on matters of great importance, even when answers are readily available," is "fundamentally at odds with the critical obligation of counsel to advise the client of 'the advantages and disadvantages of a plea agreement.'"[21] To be sure, in the habeas world of double deference, "'the question is not whether counsel's actions were reasonable,' but 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'"[22] Anaya claims that Bailey was silent on a matter of great importance—Anaya's entire defense—that would have radically altered his plea decision. We agree, and conclude there is no reasonable argument to the contrary.

Under Texas's self-defense statute, juries are generally prohibited from considering a defendant's failure to retreat in assessing the reasonableness of his belief that deadly force was necessary.[23] But there are important caveats to that general rule. Relevant here, it only applies if the actor was "*not engaged in criminal activity* at the time the deadly force [wa]s used."[24] If the actor was not engaged in criminal activity, the jury "*may not*

---

[20] *United States v. Kelly*, 915 F.3d 344, 350 (5th Cir. 2019) (quoting *Strickland*, 466 U.S. at 689).

[21] *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)).

[22] *Mejia*, 906 F.3d at 315 (quoting *Harrington*, 562 U.S. at 105).

[23] Tex. Penal Code Ann. § 9.32(d).

[24] *Id.* § 9.32(c) (emphasis added).

*consider* whether the actor failed to retreat,"[25] and the actor's belief that deadly force was necessary is "*presumed to be reasonable*."[26] In contrast, if the defendant is engaged in criminal activity at the time force is used, the jury can consider his failure to retreat before using deadly force.[27] And such a person's belief that deadly force was necessary is no longer presumed reasonable.[28]

At the time of the shooting, Anaya was engaged in criminal activity because he was a felon in possession of a firearm. As a result: (1) The jury was permitted to consider his failure to retreat and (2) his belief that deadly force was necessary was not presumed to be reasonable. The State made Anaya's failure to retreat central to its case, contending that, because Anaya was driving a car when he fired his gun, he could have easily retreated.

Anaya claims that his decision to reject the State's plea offer turned on the viability of his self-defense claim. He admitted from the get-go that he shot the victim, so his whole theory rested on self-defense. Anaya claims that Bailey told him he had a "viable defense"—that Bailey would argue Anaya's conduct was reasonable because Anaya thought his life was in danger. But Anaya avers that Bailey never informed him of the role his failure to retreat would play at trial under Texas law. In fact, Anaya claims, Bailey told him that "it did not matter or make a difference if [Anaya] had the ability to

---

[25] *Id.* § 9.32(d) (emphasis added).

[26] *Id.* § 9.32(b)(3) (emphasis added).

[27] *See id.* § 9.32(c).

[28] *Id.* § 9.32(b).

No. 18-11203

retreat." Anaya filed affidavits from himself, his wife, mother, and father—each of which supports his assertion that he would not have rejected the plea if he knew his failure to retreat would be presented to the jury. Bailey submitted a responsive affidavit and argued that it was Anaya's decision to go to trial and that Bailey never guaranteed any result. But Bailey's affidavit didn't even attempt to refute the accusation that he failed to correctly inform Anaya about the role of retreat.

Bailey's understanding of the self-defense statute was clearly wrong. But was Bailey's advice so gravely in error that he was acting outside the "wide range of reasonable professional assistance?"[29] Running throughout *Strickland* cases is a distinction between strategic choices, which are "virtually unchallengeable,"[30] and "[a]n attorney's ignorance of a point of law."[31] When ignorance of a key point of law is combined with failure to do basic research, that's a "quintessential example of unreasonable performance under *Strickland*."[32]

Our *Strickland* precedent in the context of plea negotiations is clear that a defendant must have "a full understanding of the risks of going to trial."[33] Otherwise, "he is unable to make an intelligent choice of whether to

---

[29] *See Kelly*, 915 F.3d at 350.

[30] *Strickland*, 466 U.S. at 690.

[31] *Hinton v. Alabama*, 571 U.S. 263, 274 (2014).

[32] *Id.*

[33] *Grammas*, 376 F.3d at 436 (quoting *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995)).

9

No. 18-11203

accept a plea or take his chances in court."[34] Plea negotiations are full of high stakes and hard choices. Pitch perfect counsel is neither expected nor required. But having competent counsel means being "aware of the relevant circumstances and the likely consequences" of going to trial.[35] Counsel is deficient when a defendant charges onward to trial "with a grave misconception as to the very nature of the proceeding and possible consequences."[36]

Anaya's primary support is *Padilla v. Kentucky*. There, counsel told the defendant that he wouldn't be deported if he pleaded guilty to drug distribution.[37] But the conviction required deportation, so his guilty plea made "deportation virtually mandatory."[38] The Supreme Court found that, because the answer was readily available and the law was clear, counsel's "duty to give correct advice [was] equally clear."[39] Anaya also directs us to *Lafler v. Cooper* and *Hinton v. Alabama*. In *Lafler*, the defendant rejected a plea offer because his counsel advised him that "the prosecution would be unable to establish intent to murder [the victim] because she had been shot

---

[34] *Id.* (quoting *Teague*, 60 F.3d at 1171).

[35] *Rivas-Lopez*, 678 F.3d at 356; *see also Grammas*, 376 F.3d at 436 ("When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court." (quoting *Teague*, 60 F.3d at 1171)).

[36] *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. Unit B Mar. 1981).

[37] *Padilla*, 559 U.S. at 359.

[38] *Id.*

[39] *Id.* at 369.

below the waist."[40] There, the Supreme Court did no analysis on the performance prong because all parties agreed that counsel was deficient.[41] In *Hinton*, the lawyer failed to request funding in order to replace an inadequate expert because the lawyer mistakenly believed he had received all of the funding he could get under Alabama law.[42] A "cursory investigation" would have revealed that he could be reimbursed for "any expenses reasonably incurred."[43]

Here, Bailey's performance was deficient and there can be no reasonable argument otherwise in light of *Padilla*, *Lafler*, and *Hinton*.[44] Anaya couldn't fully understand the risks of rejecting the State's plea offer because he didn't know that his status as a felon in possession of a weapon would move the goalpost at trial. Bailey's silence on a "matter[] of great importance" was "fundamentally at odds" with his critical obligation "to advise the client of 'the advantages and disadvantages of a plea agreement.'"[45] And Bailey's failure to advise Anaya on the law of retreat wasn't a strategic decision. There were no difficult questions about how much to investigate or how to balance

---

[40] 566 U.S. at 161.

[41] *Id.* at 163.

[42] 571 U.S. at 274.

[43] *Id.*

[44] *Mejia*, 906 F.3d at 315 (explaining 28 U.S.C. § 2254's standard).

[45] *See Padilla*, 559 U.S. at 370 (quoting *Libretti*, 516 U.S. at 50–51); *see also id.* (noting that, under *Strickland*, there is "no relevant difference 'between an act of commission and an act of omission.'" (quoting *Strickland*, 466 U.S. at 690)).

competing evidence.[46] Bailey knew Anaya was a felon in possession of a weapon—thus engaged in criminal activity—and Bailey failed to advise Anaya of the crucial difference that fact would make at trial.

Anaya's whole defense was self-defense. This was the *only* issue at trial. And Bailey's silence on a central component of the self-defense statute meant that Anaya couldn't appreciate the extraordinary risks of passing up the State's offer. Under *Strickland*'s performance prong, Bailey's representation fell outside the "wide range of reasonable professional assistance."[47] Under § 2254(d)'s standard, the contrary conclusion would be an unreasonable application of the Supreme Court's precedent in *Padilla*, *Lafler*, and *Hinton*.

## B

Now, the prejudice prong, viewed again with the requisite double deference. Here, Anaya's claim fails. Under *Strickland*'s prejudice prong, Anaya must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[48] A "reasonable probability" is "a probability sufficient to

---

[46] *See Strickland*, 466 U.S. at 690–91.

[47] *Kelly*, 915 F.3d at 350 (quoting *Strickland*, 466 U.S. at 689).

[48] *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694).

undermine confidence in the outcome."[49] It's "less than a preponderance of the evidence."[50]

In *Missouri v. Frye*, the Supreme Court established a three-part test for demonstrating prejudice in the context of a rejected plea offer.[51] The defendant must show that, but for his counsel's error, there is a "reasonable probability" that (1) the defendant "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel"; (2) the "plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law"; and (3) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."[52]

Here, the parties dispute what evidence is needed to demonstrate a reasonable probability that these three parts of the *Frye* test are satisfied. Anaya has compelling arguments, but ultimately the law is murky. Because it's possible that "fairminded jurists could disagree" over what is required to

---

[49] *Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008) (quoting *Strickland*, 466 U.S. at 693–94).

[50] *Id.* (quoting *Strickland*, 466 U.S. at 693–94).

[51] *Frye*, 566 U.S. at 147.

[52] *Id.*

No. 18-11203

demonstrate prejudice under *Frye*, Anaya cannot surmount the hurdle of § 2254(d).[53]

We address each part of *Frye*'s prejudice test in turn.

1

First, would Anaya have accepted the plea offer? Anaya argues that his unrebutted affidavit testimony is sufficient to show a reasonable probability he would have accepted the plea but for his counsel's erroneous advice. According to the State, the Supreme Court made clear in *Lee v. United States* that this standard cannot be met based purely on "*post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies."[54] Rather, courts must "look to contemporaneous evidence to substantiate a defendant's expressed preferences."[55] So, the State argues, Anaya's affidavits aren't competent evidence.

But the State takes the above quotes from *Lee* out of context. The full context makes clear that *Lee* imposed standards for overturning an *accepted* plea deal, not standards for obligating the government to offer again a plea *rejected* by the defendant. Here's the *Lee* language in context:

> Surmounting *Strickland*'s high bar is never an easy task, and the strong societal interest in finality has *special force* with respect to *convictions based on guilty pleas*. Courts should not *upset a plea* solely because of *post hoc* assertions from a

---

[53] *See Harrington*, 562 U.S. at 102 (explaining that § 2254(d) "preserves authority to [provide habeas relief] in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents").

[54] 137 S. Ct. 1958, 1967 (2017).

[55] *Id.*

defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.[56]

The State argues that the same considerations should apply to a defendant, like Anaya, who *rejected* his plea. But the State is wrong. We can't export the *Lee* standard—the need for contemporaneous evidence—from the context of "convictions based on guilty pleas." Here's why: The standard for evaluating a *Strickland* claim when the defendant seeks to upset a guilty plea was first laid out in 1985 in *Hill v. Lockhart*.[57] But, in 2012, the Supreme Court issued two opinions on the same day—*Lafler v. Cooper* and *Missouri v. Frye*—that governed *Strickland* analysis in the context of rejected plea offers. In *Frye*, the Court was careful to note that *Hill* was still good law when applied to upsetting convictions based on *accepted* pleas.[58] But the Court explicitly disavowed a single "means for demonstrating prejudice . . . during plea negotiations."[59] And the Court formulated a new, unique prejudice test for our context here—*rejected* pleas.[60] The Court's application of that new prejudice standard in *Lafler* makes clear that *Lee* is inapposite.

In *Lafler*, the Supreme Court didn't do its own prejudice analysis; instead, the Court relied on the Sixth Circuit's reasoning under the prejudice

---

[56] *Id.* (emphasis added) (cleaned up).

[57] 474 U.S. 52 (1985).

[58] *Frye*, 566 U.S. at 148.

[59] *Id.*

[60] *Id.*

prong.[61] There, the defendant relied only on his "uncontradicted" testimony that "had he known that a conviction for assault with intent to commit murder was possible, he would have accepted the state's offer."[62] And the Sixth Circuit rejected Michigan's argument—identical to the State's argument here—that the defendant "cannot show prejudice with his own 'self-serving statement.'"[63] Moreover, the Sixth Circuit explained that even if the defendant's assertion needed independent corroboration, the "significant disparity between the prison sentence under the plea offer and exposure after trial lends credence to petitioner's claims."[64] The same is true here. And this rationale was affirmed by the Supreme Court.

Plus, if the *Lee* Court wanted to augment the prejudice test articulated in *Frye* and *Lafler*, one would expect the Court to have connected the dots. But *Lee*—decided five years after *Lafler* and *Frye*—didn't even cite *Frye* and only once cited *Lafler*. The *Lee* dissent, however, heavily discussed both. And the majority responded in a footnote:

> The dissent also relies heavily on [*Frye* and *Lafler*]. Those cases involved defendants who alleged that, but for their attorney's incompetence, they would have *accepted* a plea deal—not, as here and as in *Hill*, that they would have rejected a plea. In both *Frye* and *Lafler*, the Court highlighted this difference . . . . *Frye* and *Lafler* articulated a *different* way to show prejudice, suited

---

[61] *Lafler*, 566 U.S. at 174.

[62] *Cooper v. Lafler*, 376 F. App'x 563, 571 (6th Cir. 2010) (unpublished).

[63] *Id.*

[64] *Id.*

No. 18-11203

to the context of pleas not accepted, not an *additional* element to the *Hill* inquiry.[65]

*Lee* affirmed what *Frye* and *Lafler* made clear: *Accepted* and *rejected* pleas arise in different contexts and require distinct tests. So *Lee*'s requirement for contemporaneous evidence is simply irrelevant in this context. There may be other reasons to doubt Anaya's affidavits, but their non-contemporaneous nature is not a problem under *Frye* and *Lafler*. Anaya could potentially satisfy part one of *Frye*'s prejudice test with the affidavits he has provided.

2

On to part two: Would the plea have been entered? Under this part of *Frye*'s test, Anaya must demonstrate that his "plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."[66] The district court concluded that the record was "silent" on these two questions, so Anaya failed to show a reasonable probability that this part of the *Frye* prejudice test was satisfied. And this is where the law gets too murky for Anaya to convincingly demonstrate an unreasonable application of federal law. Anaya argues that part two of *Frye*'s prejudice test is satisfied if there is no "particular fact" or "intervening circumstance" that would cast doubt on

---

[65] *Lee*, 137 S. Ct. at 1965 n.1 (emphasis in original); *see also Lafler*, 566 U.S. at 163–64 ("In contrast to *Hill*, here the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged."); *Frye*, 566 U.S. at 148 ("*Hill* does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations.").

[66] *Frye*, 566 U.S. at 147.

the presumption that the prosecution would have maintained the offer and the court would have accepted it. His contention appears to be that his burden here is simply to point to the record and show the *absence* of these particular facts or intervening circumstances. The State's primary response is that it is Anaya's burden to show that the plea would have been entered. But Anaya doesn't disagree with the State on *who* bears the burden; his fight is over *what* he needs to show to satisfy that burden. The State doesn't propose an alternative theory or suggest what evidence would suffice, other than to argue that Anaya must provide *affirmative* proof that demonstrates there are no particular facts or intervening circumstances.

The governing cases are not a paradigm of clarity. In *Frye*, the Court explained that if the prosecution has discretion to cancel an offer or if the trial court has discretion to refuse it, defendants must show "there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented."[67] The *Frye* Court then provided a framework for conducting this inquiry:

> It can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. So in most instances it should not be difficult to make an objective assessment as to whether or not a *particular fact* or *intervening circumstance* would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain. The determination that there is or is not a reasonable probability that the outcome of the

---

[67] *Id*. at 148.

proceeding would have been different absent counsel's errors *can be conducted within that framework*.[68]

If this were a case involving a non-deferential standard of review, we would need to explore this question in more depth.

However, we must apply the doubly deferential standard of § 2254(d) to our *Strickland* inquiry. And under § 2254(d), "an *unreasonable* application of federal law is different from an *incorrect* application."[69] To obtain relief, Anaya must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[70] As the Supreme Court has made clear, this standard is hard to meet "because it was meant to be."[71] Section 2254(d) authorizes us to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] cases."[72] That's the extent of our authority.[73]

We had no trouble concluding that Anaya satisfied § 2254(d)'s heavy burden on *Strickland*'s performance prong. But here, assuming Anaya's view of the *Frye* framework is correct, it is not "well understood and

---

[68] *Id.* at 149 (emphasis added).

[69] *Williams v. Taylor*, 529 U.S. 362, 365 (2000) (emphasis in original).

[70] *Harrington*, 562 U.S. at 103.

[71] *Id.* at 102.

[72] *Id.*

[73] *Id.*

comprehended" that defendants bear no burden to supply *affirmative proof* that the prosecution would not withdraw the plea or that the court would have accepted it. Our own precedent is clear that Anaya carries the burden to make this showing.[74] But we have never articulated how a defendant does so—whether affirmative evidence is needed. And Anaya points to no published case from any circuit that absolves the defendant of the need to supply affirmative proof of some kind.

Anaya has no doubt satisfied the third part of the *Frye* prejudice test— that "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."[75] But because the law on the burden of proof in part two of *Frye*'s prejudice test is not so clear as to foreclose the possibility of fairminded disagreement, we cannot grant Anaya the relief he requests.

IV

For these reasons, we AFFIRM.

---

[74] *Rivas-Lopez*, 678 F.3d at 359 ("[T]here is a burden on [defendant] to show that there was a reasonable probability that the prosecution would not have withdrawn the plea offer and that the court would have accepted its terms.").

[75] *See Frye*, 566 U.S. at 147. Part three is easily satisfied here: The plea offered Anaya 30 years for murder and 15 for aggravated assault. His ultimate sentences were for 40 years and 99 years respectively.