# United States Court of Appeals for the Fifth Circuit

———————

No. 23-10328

———————

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Emmanuel Nicholas Rosa,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:22-CR-95-1

———————————————————————

Before Richman, *Chief Judge*, and Graves and Wilson, *Circuit Judges*.

Per Curiam:[*]

This case concerns whether the district court erred in setting an assessment payment schedule as part of Emmanuel Rosa's conditions of supervised release and whether Rosa waived his right to appeal that aspect of his sentence. Rosa signed a plea agreement that contained an appeal waiver and then pled guilty to one count of receiving and distributing child

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

pornography. The district court sentenced Rosa to 240 months of imprisonment and ordered him to pay assessments of $10,000 under 18 U.S.C. § 2259A and 18 U.S.C. § 3014 ($5,000 under each statute).

Rosa now contends the district court erred by ordering simultaneous payment of the unpaid balance of these assessments during his period of supervised release, asserting that the court could not order him to pay the § 3014 assessment until he has completed payment under § 2259A. The Government counters that Rosa waived his right to appeal these assessments and payment schedule but, even if not, Rosa fails to show any plain error that affected his substantial rights. We conclude Rosa waived his right to appeal the assessments and the payment schedule and dismiss this appeal.

## I.

Rosa pled guilty to violating 18 U.S.C. §§ 2252A(a)(2) & (b) by receiving and distributing child pornography. His plea agreement contained several relevant sections. Paragraph 3, titled "Sentence," reads:

> 3. **Sentence**: The minimum and maximum penalties the Court can impose include:
>
> . . .
>
> f. an assessment, pursuant to 18 U.S.C. § 2259A, for no more than $35,000 for offenses occurring on or after December 7, 2018;
>
> g. if the Court finds the defendant is not indigent, an additional mandatory special assessment of $5,000 must be imposed pursuant to 18 U.S.C. § 3014;[1]
>
> . . . .

---

[1] These are in addition to a separate $100 "mandatory special assessment" that is not at issue in this case.

Paragraph 6, titled "Mandatory special assessment," again delineates these two assessments and the statutory parameters governing their imposition. Paragraph 7, "Defendant's Agreement," orders "that any financial obligation imposed by the Court . . . is due and payable immediately" and emphasizes Rosa's "continuing obligation to pay in full as soon as possible . . . ." Finally, Paragraph 12 contains an appeal waiver: "[Rosa] waives [his] rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal the conviction, sentence, fine and order of restitution or forfeiture . . . ."

After pleading guilty but prior to sentencing, Rosa received his pre-sentence investigation report (PSR). The PSR recommended as a condition of his supervised release that if any part of the § 2259A or § 3014 assessments remained unpaid at the start of his supervised release, Rosa must "make payments on such unpaid balance beginning 60 days after release from custody at the rate of at least $100 per month until the assessment is paid in full." Rosa also received and reviewed his supervised release conditions, which adopted this proposed condition. He did not object to the PSR or conditions of supervised release, instead stating "the defense ha[d] reviewed the PSR, [and] [saw] no meritorious objections . . . ."

At sentencing, Rosa confirmed he had no objections to the PSR. The district court ordered Rosa, *inter alia*, to pay $5,000 at the rate of $200 per month for each assessment ($10,000 total, payable $400 per month).[2] Rosa acknowledged he would pay "[a] total of 400 a month" for the "separate" assessments.

---

[2] The Government acknowledges there is a discrepancy between the oral pronouncement and written judgment as to how much Rosa must pay each month while on supervised release. However, this is not at issue on appeal.

Rosa now appeals the assessment payment schedule and requests that this court modify it.

## II.

We review *de novo* whether an appellate waiver bars an appeal. *United States v. Strother*, 977 F.3d 438, 442 (5th Cir. 2020).  Doing so, we consider "whether the waiver was knowing and voluntary, and whether, under the plain language of the plea agreement, the waiver applies to the circumstances at issue." *Id.* (internal citations and punctuation omitted).  Rosa does not contest that he knowingly and voluntarily signed the plea agreement.  The case turns, then, on whether the plain language of Rosa's appeal waiver applies to "the circumstances at issue," the assessment repayment schedule.

We conclude it does.  The plea agreement plainly shows that the parties considered the assessments, and by extension their payment schedule, to be part of Rosa's sentence.  Rosa plainly waived his right to appeal the sentence, and thus the assessments and the payment schedule.[3]

Rosa admits that "sentence" "could encompass Rosa's claimed error in isolation," but contends that, contextually, it "cannot bear that construction."  He argues that "[t]he plea agreement's plain language compels an interpretation of 'sentence' that excludes monetary penalties such as fines and restitution."  While Rosa concedes that the assessments are included under the plea agreement's "Sentence" paragraph, he contends that reading "sentence" to cover the assessments would render the phrase

---

[3] The Government makes alternative arguments that the assessments and their payment schedule are encompassed by the term "fines" or are contained within the conditions of supervised release.  We do not address these contentions because we conclude that the assessments are part of the sentence.

"fine and order of restitution or forfeiture" in his appeal waiver "meaningless."

To confect this reading, Rosa compares the language in Paragraph 3—"Sentence"—to that in Paragraph 12—the appeal waiver. The "Sentence" paragraph includes potential assessments, fines and restitution that might be imposed upon Rosa in the district court's discretion. The appeal waiver states that Rosa "further waives [his] right to contest the conviction, *sentence, fine and order of restitution or forfeiture* . . . ." So, in Rosa's view, his "sentence" cannot subsume "fines" and "restitution" in Paragraph 3 while those terms are enumerated separately in Paragraph 12. Otherwise, "fine and order of restitution" would be "meaningless." Rosa asserts that the term "sentence" is at least ambiguous and urges us to "turn 'from the language of the contract' to the 'surrounding circumstances.'" Ultimately, Rosa urges that the ambiguity dictates a construction against the Government and a finding that he did not waive his right to appeal the assessment payment schedule.

The Government responds that the assessments, and by extension their payment schedule, are plainly included in Rosa's "sentence." For support, the Government cites *United States v. Madrid*, 978 F.3d 201 (5th Cir. 2020). In *Madrid*, this court determined that the plea agreement at issue "addressed terms regarding restitution and special assessments, and [the defendant] expressed a clear understanding of his right to appeal and agreed to that waiver." *Id.* at 205. Moreover, the *Madrid* district court had "confirmed that [the defendant] read, reviewed with his counsel, and understood the terms of the plea agreement, including the appeal waiver provision and that the other charges that would be dropped." *Id.* This court held the appeal waiver was enforceable and applied to bar the defendant's appeal. *Id.*

While Rosa counters that the appeal waiver at issue here differs substantially from the one in *Madrid*, that case is at least instructive. As in *Madrid*, we must consider "the parties' intent at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances." 978 F.3d at 205. And we may not "rewrite the terms of a plea agreement entered into willingly and knowingly; instead, the court is only responsible for ensuring that freely negotiated terms of plea agreements are enforced." *Id.* (internal citations and quotations omitted). Applying these principles, Rosa has clearly waived his right to appeal his sentence, and that includes the assessments and their payment schedule.

For starters, Rosa *admits* that "[t]he term [sentence] . . . could encompass [his] claimed error . . . ." Moreover, the assessments are included in the "Sentence" paragraph of the plea agreement. Paragraph 7 of the agreement clearly outlines Rosa's obligation to pay the assessments (immediately). Rosa was provided his PSR and proposed conditions of supervised release, which both included proposed payment schedules, prior to sentencing. At sentencing Rosa confirmed he understood he would pay "[a] total of 400 a month" for the "separate" assessments. Finally, he stated before and during sentencing that he had no objections to the PSR or the proposed assessment payment schedule.

Rosa's contention that his "sentence" must be distinct from the assessments because the appeal waiver separately enumerates the "sentence, fine and order of restitution or forfeiture" is unpersuasive. If anything, the more specific language in the appeal waiver cuts *against* his position because that language sweeps in the assessments whether they are part of the "sentence," or are "fines" or "restitution." Regardless, reading the paragraphs of the plea agreement together, the parties clearly intended for these assessments, including when they would be paid, to be a part of Rosa's sentence, and for them to be covered by the appeal waiver. Rosa's attempts

to create ambiguity are unavailing.[4] "By challenging [the terms of the agreement] of which he was repeatedly admonished, [Rosa] is attempting to circumvent the waiver-of-appeal provision contained in the negotiated plea agreement." *Madrid*, 978 F.3d at 205 (citing *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012)). He may not do so.

## III.

It is clear that the assessments and their payment schedule set by the district court were part of Rosa's sentence. Rosa expressly confirmed at sentencing that he understood that during his supervised release, he would owe $400.00 per month until the assessments were fully paid. And Rosa plainly waived his right to contest his sentence on appeal. "[T]he court is . . . responsible for ensuring that freely negotiated terms of plea agreements are enforced" and not "re-writ[ten]." *Id.*

APPEAL DISMISSED.

_____

[4] Because the plea agreement is unambiguous regarding the intent of the parties, we decline Rosa's invitation to consider the "surrounding circumstances," i.e., the "statutory framework at the backdrop of the parties' negotiation[s]."