**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-7105**

———————

UNITED STATES OF AMERICA,

               Plaintiff – Appellee,

    v.

EDWIN LEO BROWN,

               Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Dever III, District Judge.  (7:16-cr-00110-D-1; 7:19-cv-00103-D)

———————

Argued:  December 12, 2024                         Decided:  May 20, 2025

———————

Before KING, GREGORY, and RUSHING, Circuit Judges.

———————

Reversed and remanded with instructions by published opinion.  Judge Gregory wrote the opinion, in which Judge King joined.  Judge Rushing wrote a dissenting opinion.

———————

**ARGUED:**  Joshua Revesz, O'MELVENY & MYERS LLP, Washington, D.C., for Appellant.  Jonathan Silberman, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Anton Metlitsky, New York, New York, David K. Roberts, Ashley Robertson, Daniel Lautzenheiser, O'MELVENY & MYERS LLP, Washington, D.C., for Appellant.  Michael F. Easley, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

GREGORY, Circuit Judge:

This appeal concerns *Strickland v. Washington*, 466 U.S. 668 (1984), which governs whether an attorney's performance was deficient or fell below an objective standard of reasonableness, and whether such deficient performance prejudiced the defendant as a result. Appellant Edwin Leo Brown rejected a plea deal after his attorney provided erroneous advice as to his sentencing exposure. The district court found—and the government concedes—Brown's attorney performed deficiently. However, the district court ultimately found Brown failed to demonstrate he was prejudiced by his attorney.

As such, the only question before us is whether Brown was prejudiced by his attorney's shortcomings, i.e., if there was a "reasonable probability" Brown would have accepted the plea deal if properly advised. Finding Brown has sufficiently established he was prejudiced by his attorney's shortcomings, we reverse the district court's denial of relief, remand the case, and require the government to re-offer Brown the same plea agreements.

I.

In October 2016, Brown was indicted on four counts of possession with the intent to distribute cocaine base and a fifth count for being a felon in possession of a firearm. J.A. 31–32. The government had evidence of Brown selling cocaine base on four different occasions—which collectively totaled 1.63 grams—to a confidential informant, and also discovered a firearm upon his arrest. J.A. 120, 146–47. Brown faced up to 20 years' imprisonment on each of the four drug charges, and up to 10 years' imprisonment on the

2

gun charge. *See* J.A. 52–53. Put another way, Brown was facing a maximum sentencing exposure of up to 90 years' imprisonment.

A.

In November 2016, Frank Harper was appointed as Brown's attorney. J.A. 9, Docket No. 19. At their initial meeting, Harper and Brown discussed the sentencing process, and Brown instructed Harper that he did not want to go to trial and preferred to obtain a plea offer. J.A. 473–74. Harper discussed the case with the government and subsequently informed Brown via letter that he was likely facing up to 120 months' imprisonment. J.A. 518–19. At their next meeting, Harper presented Brown with two plea agreements. J.A. 519. The plea agreements—one of which had cooperation language and one of which did not—required Brown to plead guilty to two counts (one drug count and the gun count). *Id.* Harper informed Brown that he thought he could get the plea deal "down to just the gun" charge. J.A. 520.

After more negotiation, Harper obtained two plea agreements—one of which had cooperation language and one of which did not—that only consisted of the gun charge. J.A. 520. Both plea agreements limited Brown's prison exposure to ten years. J.A. 520–21. Harper provided Brown with the sentencing guidelines matrix chart and explained to Brown that he was facing a 10-year maximum on the gun charge under the terms of either plea agreement. J.A. 395–96. Harper advised Brown that he should take the plea agreement, but Brown was skeptical and "felt like [Harper] could've got [him] a better plea[.]" J.A. 395–96, 477. Brown alleged that after he expressed this concern with Harper, Harper stated "it's not my fault why you're facing ten years." J.A. 477. "[F]rom that

3

moment," Brown did not "trust [Harper's] judgment[,]" and told Harper as much. *Id.* Harper subsequently withdrew as counsel. *Id.*

In February 2017, Brett Wentz entered his appearance as Brown's counsel. J.A. 11. Wentz and Brown discussed the most recent plea agreements that Harper had procured for Brown, and Wentz affirmed that Brown would face a statutory maximum of 10 years' imprisonment if he accepted the plea offer. *See* J.A. 582.

However, Wentz nonetheless advised Brown "that for sentencing purposes, it did not matter whether he accepted the plea agreement because the guideline range would be the same." J.A. 182. In other words, Wentz advised Brown that he would be facing a statutory maximum of ten years' imprisonment regardless of whether he accepted a plea offer or not. *See id.* Operating under this guidance, Brown rejected the plea offers shortly before his Rule 11 hearing. J.A. 547–48.

### B.

During the May 2017 arraignment, the district court advised Brown that he faced up to 20 years' imprisonment on each of the four drug charges and asked whether Brown "under[stood] the potential penalties associated" with the drug counts. J.A. 37, 52. At that point, Brown and Wentz conferred off the record. *Id.* After conferring with Wentz, Brown told the court he understood the potential penalties. J.A. 53.

The district court then advised Brown that he faced up to 10 years' imprisonment on the gun charge and asked whether Brown "under[stood] all those potential penalties" associated with the gun charge. *Id.* At that point, Brown and Wentz again conferred off

4

the record.  *Id*.  After conferring with Wentz, Brown told the court he understood the potential penalties.  J.A. 54.

The district court further advised Brown it had "authority to impose the maximum penalty authorized by law" and that "even if [his] lawyer or anyone else [gave] [Brown] his best estimate of what he thinks the advisory guideline range would be, . . . any such prediction on any sentencing topic is not binding on the [district court][.]" J.A. 55.  Brown affirmed that he understood and subsequently entered an open guilty plea as to all five counts.  J.A. 55, 57.

At the September 2017 sentencing hearing, the district court sentenced Brown to a total of 210 months' imprisonment—roughly 17.5 years—on all counts.  J.A. 110.  This sentence was an upward departure from the advisory guidelines range of 87 to 108 months. J.A. 93, *see also* J.A. 99 (district court granting the government's motion for upward departure).

## C.

In September 2017, Brown filed a direct appeal, and the Fourth Circuit appointed counsel for Brown.  *See United States v. Brown*, No. 17-4595 (4th Cir. Jan. 3, 2018), Docket Nos. 1, 2; J.A. 114.  Also, around this time, Brown wrote a letter to his newly appointed counsel outlining eight "relevant issues & law for direct appeal" which was inadvertently filed on ECF.  *United States v. Brown*, No. 17-4595 (4th Cir. Jan. 3, 2018), Docket No. 14.  The first six issues, as well as the eighth issue, appear to explain and outline Brown's sentencing enhancements and requests for counsel to "argue these issues" on direct appeal.  *See id*.  With respect to the seventh issue, Brown asserted, "[t]he

5

governments motion for variance was do [sic] to fact that I would not give up my appeal rights and except [sic] a plea agreement" and "[m]y trial attorney should have asked for a continuance, but that was not the case." *Id.*

Brown's sentence was ultimately affirmed on direct appeal in an unpublished per curiam opinion. J.A. 129–32. In June 2019, after the Court affirmed Brown's sentence, Brown filed a motion to vacate his sentence pursuant to 18 U.S.C. § 2255 stating "[p]re-trial counsel provided ineffective assistance of counsel in failing to advise and properly counsel [Brown] to accept a favorable written plea offer." J.A. 136. In response, the government conceded Brown had "made the requisite showing of deficient performance by counsel" and agreed with Brown "that an evidentiary hearing [was] necessary to determine whether [Brown] ha[d] established that he was prejudiced by Wentz's deficient advice." J.A. 168.

The district judge subsequently referred the matter to a magistrate judge to hold an evidentiary hearing to determine whether Brown was prejudiced by Wentz's deficient advice. J.A. 598. During the June 2022 evidentiary hearing, Harper testified to the initial plea negotiations and his relationship with Brown. J.A. 469, 514–28. Specifically, Harper testified Brown had "a couple of issues" with the plea agreements—namely, the fact that the plea agreement required (1) ten years imprisonment and (2) an appellate waiver. J.A. 522.

Brown testified he first learned Wentz provided him erroneous legal advice in October 2017 when another inmate helped him "understand what was going on" with his case. J.A. 487–88. Additionally, Brown testified he "would have taken the plea that the Government offered [him]" had he known he was facing a theoretical maximum of 90 years'

6

imprisonment, and that he believed, based on Wentz's advice, that his "maximum exposure" when he pleaded to all five counts was "[n]o more than ten years." J.A. 480, 484.

Brown also addressed the Rule 11 plea colloquy. J.A. 482–84. Specifically, Brown testified to his off-the-record exchanges with Wentz that occurred after the district court advised Brown of the maximum penalties for the five counts, and stated during those moments, Wentz told him he should not "worry" that the district court had recited statutory maximum sentences that differed from what Wentz had previously advised. J.A. 484. Brown further testified that based on these off-the-record exchanges, he concluded that he should "[n]ot . . . worry about what the judge was actually saying at the time" and that he should "[j]ust focus on the Guidelines" that he previously discussed with Wentz. *Id.*

Wentz testified that he had no recollection of what he and Brown discussed during the off-the-record exchanges and did not "have a specific recollection" of the hearing generally. *See* J.A. 540–41. Wentz also testified that Brown did not wish to sign the plea agreement because Brown was concerned with waiving his appellate rights. J.A. 539.

D.

In August 2022, the magistrate judge issued an order recommending the denial of Brown's motion, stating Brown had "presented no contemporaneous evidence to support his claim that he would have accepted the plea agreement if he knew he faced more than 10 years in prison" and Brown simply stating that he would have accepted the plea agreement, without more, did not entitle Brown to relief. J.A. 579, 588. The magistrate judge cited *Lee v. United States*, 582 U.S. 357 (2017) for this proposition. J.A 588. The Supreme Court in *Lee* found, amongst other things, in the context of a defendant accepting

7

a plea deal, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his [counsel's] deficiencies" and instead "[j]udges should [] look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 582 U.S. at 369.

In addition, and contrary to Brown's argument, the magistrate judge found "the contemporaneous evidence suggest[ed] that Brown's decision to reject the plea agreement was based on a desire to maintain his right to appeal his conviction and sentence" and "[a] review of the record shows that there were many opportunities when Brown could have, but did not, raise concerns over his potential sentence if he pleaded guilty to all five charges." J.A. 589. For example, the magistrate judge stated "[a]t no point" during the arraignment "did Brown alert the court that these warnings conflicted with the advice he received from his attorney or that they gave him pause about pleading guilty to all five counts without a plea agreement." J.A. 590. In addition, Brown stated that "he conferred with his attorney after the court told him that the attorney's sentencing estimate was not binding on the court" but "the transcript [did] not reflect that such a discussion occurred." *Id*.

The magistrate judge also referenced Brown's letter to his appointed counsel on direct appeal that was inadvertently filed on ECF. Specifically, the magistrate judge noted Brown did not "include Wentz's failure to properly advise him on his sentencing exposure" as one of the eight issues outlined in the letter, and "given that Brown included a relatively minor attorney performance issue in his list of appellate issues, the omission of the much more serious sentencing-estimate issue is glaring" especially considering this letter was sent "two months after [Brown's] fellow inmate alerted him to Wentz's error." J.A. 592. In

8

addition, the magistrate judge stated Brown's letter "note[d] his belief that the government sought a departure because he 'would not give up [his] appeal rights and except [sic] a plea agreement.'" *Id.* (alterations in original). This comment from Brown, in addition to Harper and Wentz's testimony, "supports the United States' argument that Brown's decision to reject the plea agreement focused on preserving his appeal rights, not limiting his sentencing exposure." *Id.* Therefore, the magistrate judge found Brown did not "establish a preponderance of the evidence that he was prejudiced by Wentz's failure to properly advise him about his sentencing exposure[,]" and accordingly, recommended the district court "deny Brown relief on his remaining ineffective assistance claim." J.A. 592–93.

### E.

In September 2022, the district court issued an order adopting the magistrate judge's order recommending the denial of Brown's motion to vacate. J.A. 596–602. The district court noted the magistrate judge "credited the testimony of Brown's former counsel, Harper and Wentz, who both testified that Brown did not want an appellate waiver in any plea agreement" and "declined to credit Brown's testimony that if Brown had known by pleading guilty without a plea . . . he would have accepted the government's . . . plea agreement[.]" J.A. 600–01.

The district court further quoted *Lee*, 582 U.S. at 358–59, and stated "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his [counsel's] deficiencies" and instead "[j]udges should [] look to contemporaneous evidence to substantiate a defendant's expressed preferences." J.A. 601. Accordingly, the district court found, "[b]ased on the entire record, even if Wentz had properly advised Brown about his sentencing exposure . . . Brown would not have signed

9

the non-cooperation plea agreement with an appellate waiver and pleaded guilty to count five pursuant to the plea agreement" and "Brown's desire to avoid waiving his right to appeal was more important to Brown than his sentencing exposure." *Id.*

Hence, the district court found it agreed with the magistrate judge that "Brown 'presented no contemporaneous evidence to support his claim that he would have accepted his plea agreement if [counsel] properly advised him about his sentencing exposure'" and Brown "failed to prove by a 'preponderance of the evidence that he was prejudiced by Wentz's failure to properly advise him about his sentencing exposure.'" J.A. 599, 601 (alterations in original). Accordingly, the district court adopted the magistrate judge's order and denied Brown's motion to vacate. J.A. 602. Brown now appeals the district court's order denying his motion to vacate.

II.

We review a district court's denial of a 28 U.S.C. § 2255 motion de novo. *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019). While the Court reviews a district court's factual findings for clear error, *United States v. Ragin*, 820 F.3d 609, 617 (4th Cir. 2016), "[t]he question of whether trial counsel provided ineffective assistance is a mixed question of law and fact" subject to de novo review. *United States v. Tucker*, 603 F.3d 260, 262 (4th Cir. 2010).

III.

The district court erred in finding *Lee* applied in the context of rejected plea deals, and that Brown was required to present "contemporaneous evidence" to support his claim

10

that he would have accepted the government's plea offer if properly advised. Moreover, Brown demonstrated a reasonable probability that, but for Wentz's erroneous advice regarding sentence exposure, he would have accepted the government's offer. We address each issue in turn.

1.

But first, as an initial matter, we find that the proper standard of review is de novo. The magistrate judge did not explicitly make a credibility finding. Rather, the magistrate judge detailed the relevant testimonies and rendered a conclusion, but made no findings of fact. Put another way, only a judgment was made. To state that any, or all, of the judgment was a finding of fact would all but swallow appellate review. Likewise, the district court did not make a credibility finding by simply adopting the magistrate judge's recommendation. In any event, all roads lead back to assessing this case through the lens of *Strickland*, which this Court reviews de novo. *Tucker*, 603 F.3d at 262.

2.

The district court erroneously relied on *Lee* in finding, amongst other things, "Brown 'presented no contemporaneous evidence to support his claim that he would have accepted his plea agreement if [counsel] properly advised him about his sentencing exposure.'" J.A. 599. This is because the prejudice standard upheld in *Lee* is inapposite to the facts of the instant appeal, as *Lee* concerns *accepted* plea deals and this case concerns a *rejected* plea deal, and therefore, any such reliance on *Lee* by the district court was error.

In *Lee*, the defendant alleged he had accepted a guilty plea based on counsel's deficient advice as to his deportation consequences, and that he would have proceeded to

11

trial had he been properly counseled. 582 U.S. at 361–62. While analyzing the defendant's claim, the Supreme Court stated "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and rather, courts "should look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id*. at 369. However, the Supreme Court found the defendant "adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation" because (1) "[t]here is no question that 'deportation was the determinative issue'" to the defendant; (2) the defendant's responses during his plea colloquy confirmed the importance he placed on deportation; and (3) the defendant had strong connections to the United States and no connections to the deportation country. *Id.* at 369–70. The Supreme Court ultimately remanded the case for further proceedings upon determining prejudice, finding it was possible that a defendant would risk trial to avoid being deported. *Id*. at 371.

As previously mentioned, the biggest distinction between *Lee* and the instant appeal is that *Lee* concerned an individual who accepted a guilty plea offer, while the instant appeal concerns an individual who rejected a guilty plea offer. Indeed, the Supreme Court in *Lee* expressly distinguished *Lee* from *Missouri v. Frye*, 566 U.S. 134 (2012) and *Lafler v. Cooper*, 566 U.S. 156 (2012), which both analyzed *Strickland* in the context of a rejected plea offer. Specifically, the Supreme Court in *Lee* stated, in reference to *Frye* and *Lafler*, "[t]hose cases involved defendants who alleged that, but for their attorney's incompetence, they would have *accepted* a plea deal—not, as here . . . that they would have rejected a plea." 582 U.S. at 365 n.1 (emphasis in original). The Supreme Court went on to say

12

"*Frye* and *Lafler* articulated a *different* way to show prejudice, suited to the context of pleas not accepted[.]" *Id*. (emphasis in original). In other words, the standard for demonstrating prejudice differs depending on whether a defendant accepts or rejects a plea offer.

While the Fourth Circuit has not explicitly opined on "contemporaneous evidence" and the nuances of *Frye*, *Lafler*, and *Lee* in the context of rejected plea offers, some of our sister circuits have done so. For example, the Fifth Circuit stated, in reference to a habeas case that originated in state court, "[a]ccepted and rejected pleas arise in different contexts and require distinct tests" and therefore, "*Lee*'s requirement for contemporaneous evidence is simply irrelevant" in the context of rejected pleas. *Anaya v. Lumpkin*, 976 F.3d 545, 556 (5th Cir. 2020). The Tenth and D.C. Circuits, on the other hand, have applied a contemporaneous evidence requirement, but stated such a requirement is almost always satisfied when there is a significant disparity between the plea offer and the sentencing exposure the defendant ultimately received. *See United States v. Kearn*, 90 F.4th 1301, 1312 (10th Cir. 2024) (stating a "sentence disparity is 'strong evidence of a reasonable probability that a properly advised defendant would have accepted a plea offer, despite earlier protestations of innocence'") (quoting *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003)); *United States v. Knight*, 981 F.3d 1095, 1103 (D.C. Cir. 2020) (finding defendant's "significant sentencing disparity [was] contemporaneous evidence that [defendant] would have accepted the plea offer had counsel correctly apprised him of how favorable it was and of the sentencing exposure he would face if he declined the offer and went to trial"). In addition, the Third Circuit recently held "[d]isparities in a defendant's comparative sentence exposure between the actual sentence faced and a more favorable

13

sentence he could have received if his counsel had been effective are an important factor in the reasonable-probability inquiry where a defendant claims he would have accepted a plea but for his counsel's error." *Baker v. United States*, 109 F.4th 187, 197 (3d Cir. 2024). We now join the Fifth Circuit and find accepted and rejected plea offers arise in different contexts, and a defendant who rejected a plea offer need not present contemporaneous evidence to support his ineffective assistance claims.

Accordingly, the district court erred in finding *Lee* applied in the context of rejected pleas and Brown was required to present "contemporaneous evidence" to support his claim that he would have accepted the government's plea offer.

While my colleague in dissent places great emphasis on *Walters v. Martin*, 18 F.4th 434 (4th Cir. 2021), such emphasis is, with all due respect, misplaced. To put it simply, *Walters* is inapposite from the instant appeal. First, *Walters* originated in state court, which means this Court was bound by an Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") standard that the Court is not bound by here. *See id.* at 441. By way of AEDPA, the Court was likewise bound to defer to certain factual determinations and found, in assessing the *Frye* standards, that "[t]he record provide[d] ample support for the state court's factual finding that [the defendant] was unwilling to accept a substantial term of incarceration during the relevant timeframe." *Id.* at 443. Aside from that, the defendant in *Walters* ultimately received and accepted a plea deal, regardless of whether he deemed it satisfactory or not. *Id.* at 437–38.

But *Walters* is not this case. Unlike *Walters*, this case originated in federal court, and as such, we are not bound by AEDPA or a lower court's factual determinations, and

as stated in Section III.1, review Brown's case de novo. Moreover, unlike the defendant in *Walters*, after Wentz provided the erroneous advice, Brown did not receive any other plea deal. Instead, he opted to plead guilty and received a sentence much greater than he would have received. Given these procedural and factual differences, *Walters*, with all due respect, does not guide our analysis.

To be sure, and as explained in Section III.3, there may be circumstances that permit going outside the traditional bounds of *Frye*, and a defendant may be required to show more than just a guilty plea to prevail on his or her *Strickland* claim. But that is not the case here—where the disparity is so great that any defendant in Brown's shoes would have taken the plea deal if properly advised.

3.

"The Sixth Amendment . . . provides that the accused shall have the right to assistance of counsel in all criminal prosecutions." *Frye*, 566 U.S. at 138. "The right to counsel is the right to effective assistance of counsel." *Id*. To prevail on a claim for ineffective assistance of counsel, a defendant must show: (1) his counsel performed deficiently, and (2) prejudice, or the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id*. at 694.

To establish the second prong—prejudice—in the context of a rejected plea offer, the defendant must show that, but for his counsel's error, there is a "reasonable probability": (1) the defendant "would have accepted the earlier plea offer had [he] been

15

afforded effective assistance of counsel"; (2) the "plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law"; and (3) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147. Regarding the first element, a defendant may demonstrate "reasonable probability" he would have accepted the government's plea offer if he pleaded guilty to a more serious charge. *See id.* at 150.

"It may be in some cases defendants must show more than just a guilty plea to a charge or sentence harsher than the original offer." *Frye*, 566 U.S. at 150. For example, "revelations between plea offers about the strength of the prosecution's case may make a late decision to plead guilty insufficient to demonstrate, without further evidence, that the defendant would have pleaded guilty to an earlier, more generous plea offer if his counsel had reported it to him." *Id.*

Here, Brown has established an ineffective assistance of counsel claim against Wentz under *Strickland*. As an initial matter, neither party disputes Wentz performed deficiently. Rather, the parties dispute whether the second prong, prejudice, is met.

In the context of a rejected plea offer, Brown has adequately demonstrated he was prejudiced by Wentz's advice. With respect to the first element, there is a "reasonable probability," but for Wentz's error, Brown "would have accepted the earlier plea offer" had he been afforded effective assistance of counsel. *Frye*, 566 U.S. at 147. Indeed, Brown testified at his evidentiary hearing that he "would have taken the plea that the Government offered [him]" had he known he was facing a theoretical maximum of 90 years'

16

imprisonment, and that he believed, based on Wentz's advice, that his "maximum exposure" when he pleaded to all five counts was "[n]o more than ten years." J.A. 480, 484. In addition, Brown pleaded guilty to more serious charges—namely, receiving 17.5 years' imprisonment when the government's plea offer had a sentencing exposure of 10 years' imprisonment—which is enough to demonstrate "reasonable probability" under the first prong of *Frye*. Hence, the first element is satisfied.

With respect to the second element, neither party disputes this issue on appeal. Hence, an analysis of this prong is not necessary.

With respect to the third element, there is a "reasonable probability," but for Wentz's error, "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147. Specifically, if Brown had accepted the government's plea offer, he would have faced, at most, 10 years' imprisonment instead of 17.5 years' imprisonment. The government's plea offer—which was 7.5 years less than the sentence Brown ultimately received—would have resulted in a more favorable result of the criminal process for Brown. Hence, the third prong is satisfied. While it may be true that "in some cases defendants must show more than just a guilty plea to a charge or sentence harsher than the original offer[,]" *Frye*, 566 U.S. at 150, the exception outlined in *Frye* is inapplicable to this case and the government has put forth no argument to show such exception should apply.

In addition, the mere fact that Harper—Brown's first attorney—properly advised Brown of the correct amount of time he was facing does not impact the prejudice inquiry or cure Wentz's ineffective assistance. Given Brown and Harper's troubled attorney-client

17

relationship, it is not unreasonable for a client to discount information from an attorney he or she does not trust. Moreover, the fact that Harper and Wentz testified that Brown would not sign a plea agreement because he did not want to waive his right to appeal does not change our calculus. As just mentioned, Brown did not trust Harper, and their attorney-client relationship quickly deteriorated. But Brown did not have the same issues with Wentz, and at its core, Brown was (erroneously) given two options: (1) accept the plea, receive 10 years' imprisonment, but give up one's appellate rights, or (2) plead guilty, receive ten years' imprisonment, but keep one's appellate rights. When faced with such erroneous advice, it is not unusual for a defendant to choose the latter option. Hence, the fact that Brown was properly advised by Harper with respect to the amount of time he was facing in prison is insignificant and does not impact the prejudice inquiry.

Accordingly, in light of both the first and third prongs being satisfied and the second prong not being in dispute, Brown has established, in the context of his rejected plea offer, that he was prejudiced by Wentz's advice.

## IV.

For the foregoing reasons, we reverse the district court's denial of relief, remand the case, and require the government to re-offer Brown the same plea agreements.

*REVERSED AND REMANDED*
*WITH INSTRUCTIONS*

18

RUSHING, Circuit Judge, dissenting:

Edwin Brown rejected a plea deal that would have exposed him to a maximum of ten years in prison. Instead, he chose to plead guilty without a deal and was sentenced to over seventeen years. Now he says he would've taken the deal if his third attorney had properly advised him. The district court was not required to accept Brown's assertion at face value. The court held an evidentiary hearing, where Brown and two of his former attorneys testified. After assessing the witnesses' credibility and weighing all the evidence, the district court believed the attorneys, who testified that they advised Brown to take the deal but he refused because he didn't want to waive his right to appeal.

Despite identifying no clear error in the district court's factual findings, the majority reverses the district court. The majority finds a reasonable probability that Brown would've accepted the plea deal because (1) he says he would have, and (2) his ultimate sentence was longer than the sentence available under the deal. What about the contrary evidence and the district court's factual findings? The majority disregards them. What about the Supreme Court's admonition to "look to contemporaneous evidence" to substantiate a defendant's post hoc assertions? *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). The majority rejects it as unnecessary in the context of declined plea deals, despite this Court's precedent to the contrary. I respectfully dissent.

I.

A federal grand jury indicted Brown on four counts of possession with intent to distribute cocaine and one count of possessing a firearm as a felon. Brown faced a maximum of ninety years' imprisonment for those crimes—twenty years on each drug

19

count and ten years on the firearm count.  The district court appointed counsel to defend him.

Frank Harper began representing Brown in November 2016 after his first attorney withdrew.  During their initial meeting, Harper correctly advised Brown of the maximum penalties he faced.  Brown told Harper he wanted to plead guilty and avoid trial.  So Harper secured a deal in which Brown would plead guilty to the firearm count and the Government would dismiss the four drug counts; that arrangement would cap Brown's maximum sentencing exposure at ten years' imprisonment.[1]  Harper encouraged Brown to accept the deal.  He explained that Sentencing Guidelines enhancements could increase Brown's ultimate sentence and that the district court would look unfavorably on the offense conduct, including Brown's fight with the arresting officer.  Brown was unhappy with the plea offer, and Harper withdrew as Brown's counsel.

Brett Wentz then became Brown's attorney.  The Government concedes Wentz made a mistake in explaining anew the plea deal Harper had secured.  Specifically, Wentz told Brown that, because the counts would be grouped for purposes of the Sentencing Guidelines, his Guidelines range would be the same whether he took the deal or pled guilty to the entire indictment.  Wentz also explained to Brown the high likelihood of an upward departure from the Guidelines.  But Wentz failed to note that Brown's statutory sentencing

---

[1] In fact, Harper secured two plea offers that were identical except one required Brown to cooperate with the Government and the other did not.  Brown did not want to cooperate.

20

exposure would be much higher apart from the plea offer, which capped his maximum sentence at ten years.

Brown rejected the deal and pled guilty to all five counts. During the plea hearing, the district court correctly informed Brown of his maximum sentencing exposure on each count of the indictment, and Brown confirmed that he understood. The court advised Brown that his attorney's estimates and predictions about his potential sentence did not bind the court, and Brown confirmed he understood. The court further instructed Brown that, if he pled guilty, the court had authority to impose the maximum penalty authorized by law for each count. Brown again confirmed that he understood. After these warnings, Brown pled guilty to all five counts. At no point did he alert the court that its warnings conflicted with his attorney's advice or gave him pause about pleading guilty to all five counts without a plea agreement.

At sentencing, the district court calculated a Guidelines range of 87 to 108 months' imprisonment. The Government, however, requested an upward departure based on Brown's history of violence and his assault on the arresting officer, which caused serious injuries. The district court granted that departure, raising Brown's Guidelines range to 168 to 210 months' imprisonment. Brown then addressed the court but, despite knowing he now faced at least 14 years in prison, did not mention that his decision to plead guilty was based on his attorney's assurance that he could be sentenced to no more than 10 years. The court imposed a sentence of 210 months in prison, or 17.5 years.

In December 2017, Brown sent his new appellate counsel a letter identifying potential issues for appeal. Among the eight issues he listed, Brown included his belief

21

that the Government had sought an upward departure due "to the fact that I would not give up my appeal rights and [ac]cept a plea agreement." J.A. 114. A fellow inmate had previously explained to Brown that Wentz erred in describing his sentencing exposure. Yet in his letter to appellate counsel, Brown did not complain about Wentz's failure to properly advise him on his sentencing exposure, despite including the separate, relatively minor complaint that Wentz erred by not seeking a continuance to address the Government's departure motion. This Court ultimately affirmed Brown's sentence.

In June 2019, Brown filed this 28 U.S.C. § 2255 motion claiming, among other things, that his decision to reject the Government's plea offer was based on Wentz's erroneous advice about his potential sentence. The district court referred the matter to a magistrate judge for an evidentiary hearing. Brown, Wentz, and Harper testified. Brown maintained he would have accepted the plea deal had he been aware of his sentencing exposure. But both his former attorneys recalled Brown did not want to sign a plea agreement because the agreements included a waiver of the right to appeal and Brown didn't want to waive his appellate rights.

After the hearing, the magistrate judge recommended the district court deny Brown's motion because he failed to show he would have accepted the plea offer if Wentz had properly advised him about his sentencing exposure. Citing *Lee v. United States*, 137 S. Ct. 1958 (2017), the magistrate judge first observed that Brown had not presented any contemporaneous evidence to support his claim. Looking to the other evidence in the record, the magistrate judge concluded that it cut against Brown's assertion. The magistrate judge noted that Brown had not utilized his "many opportunities" to "raise

22

concerns over his potential sentence," including during his plea hearing, at sentencing, and in his letter to his appellate counsel. J.A. 589. The magistrate judge credited Harper's and Wentz's testimony that "Brown took issue with the plea agreements' requirement that he waive his right to appeal." J.A. 592. Conversely, the magistrate judge found "Brown did not persuasively address any of these issues during his testimony." J.A. 592. The magistrate judge concluded that "Brown's decision to reject the plea agreement was based on a desire to maintain his right to appeal his conviction and sentence." J.A. 589.

The district court adopted the magistrate judge's recommendation. The court rejected Brown's argument that "there was no rational reason" for him to reject the plea agreement. *Brown v. United States*, Nos. 7:16-CR-110-D, 7:19-CV-103-D, 2022 WL 4365708, at *2 (E.D.N.C. Sept. 21, 2022). As the court explained, "before a defendant knows what his sentence will be, it is not irrational to reject a plea agreement containing an appellate waiver given that such waivers generally are enforceable and can bar relief for certain changes in the law even if the defendant thereby increases his sentencing exposure." *Id.* at *3. The court "credited the testimony of Brown's former counsel, Harper and Wentz, who both testified that Brown did not want an appellate waiver." *Id.*

The court "declined to credit Brown's testimony" that he would have accepted the "plea agreement with an appellate waiver and pleaded guilty to count five" had he known pleading guilty to counts one through five without an agreement exposed him to spending more than ten years in prison. *Id.* Agreeing with the magistrate judge, the district court cited "all the opportunities when Brown could have raised, but did not raise concerns over his sentencing exposure if he pleaded guilty to all five charges," including his plea hearing,

23

sentencing, and appeal. *Id.* at \*2. The court noted that Brown's comment to his appellate counsel about refusing to give up his appeal rights supported the argument that his decision to reject the plea agreement focused on preserving his appellate rights rather than limiting his sentencing exposure. And, citing *Lee*, the court observed Brown had not presented any contemporaneous evidence to the contrary.

Accordingly, "[b]ased on the entire record," the district court found "that Brown would not have signed the . . . plea agreement with an appellate waiver and pleaded guilty to count five pursuant to the plea agreement" even "if Wentz had properly advised Brown about his sentencing exposure on counts one through five." *Id.* at \*3. The court further found "that Brown's desire to avoid waiving his right to appeal was more important to Brown than his sentencing exposure." *Id.* Because Brown "failed to prove by a preponderance of the evidence a reasonable probability that he would have accepted a . . . plea agreement with an appellate waiver and pleaded guilty to count five pursuant to the plea agreement . . . if Wentz properly explained that the . . . agreement capped his sentencing exposure" at ten years, the district court found no prejudice and denied Brown relief. *Id.*

## II.

The majority faults the district court for asking whether Brown presented any contemporaneous evidence to substantiate his assertion that he would have accepted the Government's plea offer if Wentz had correctly explained his sentencing exposure. According to the majority, contemporaneous evidence is unnecessary in the context of

24

*rejected* plea deals because the Supreme Court articulated that factor in a case about an *accepted* plea deal.  The majority is wrong.

By way of background, the Sixth Amendment guarantees a defendant the effective assistance of counsel during plea bargaining.  *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010).  A defendant demonstrates that counsel was constitutionally ineffective by showing that counsel's representation "fell below an objective standard of reasonableness" and he was prejudiced as a result.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  To show prejudice when a plea offer "has lapsed or been rejected because of counsel's deficient performance," a defendant must show (1) "a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel," (2) "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it," and (3) "a reasonable probability that the end  result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  *Missouri v. Frye*, 566 U.S. 134, 147 (2012); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

To show prejudice when counsel's deficient performance caused the defendant to accept a plea instead of going to trial, the defendant must demonstrate "a 'reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.'"  *Lee*, 137 S. Ct. at 1965 (quoting *Hill*, 474 U.S. at 59).  A defendant in that situation need not "show that he would have been better off going to trial."  *Id.*  As the Supreme Court explained, *Frye* and *Lafler*'s requirement to show the

25

ultimate outcome of the criminal process would have been more favorable does not apply when counsel's incompetence caused the defendant to accept a guilty plea and forfeit a trial. *See id.* at 1965 n.1 (responding to the dissent's reliance on *Frye*'s third prong and explaining that "*Frye* and *Lafler* articulated a *different* way to show prejudice, suited to the context of pleas not accepted, not an *additional* element to the *Hill* inquiry").

In *Lee*, the defendant accepted a plea agreement but later insisted he would not have done so if his attorney had correctly advised him that pleading guilty would subject him to mandatory deportation. When the Court turned to assessing what the defendant would have done in a hypothetical world where his counsel was not deficient, it cautioned that "[s]urmounting *Strickland*'s high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." *Id.* at 1967 (internal quotation marks and citations omitted). Accordingly, the Supreme Court instructed that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*

That admonition applies whenever a court is asked to "upset a plea" based on a defendant's assertions "about how he would have pleaded but for his attorney's deficiencies." *Id.* The defendant "has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true." *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019). Thus, when testing the

credibility of such a claim, "we require defendants asserting deficiencies in the plea-bargaining process to provide evidence of their sincerity." *Id.* at 816.

That rationale applies equally to defendants who claim they *would* have accepted a plea offer absent counsel's deficiencies and to defendants who claim they *would not* have accepted a plea offer absent counsel's deficiencies. Contrary to the majority's assertion, the Supreme Court has never held otherwise. *See* Maj. Op. at 12–13. As explained above, in *Lee* the Court distinguished the three-prong prejudice test from *Frye*, which applies to rejected and lapsed plea offers, when explaining that prejudice in the context of accepted plea offers requires showing the defendant would have gone to trial. *Lee*, 137 S. Ct. at 1965 n.1. The majority quotes that discussion in its opinion. *See* Maj. Op. at 12–13 (quoting *Lee*, 137 S. Ct. at 1965 n.1). But the difference in prejudice standards does not render the Supreme Court's later instruction—about how to judge the credibility of a defendant's post hoc assertions—irrelevant in the context of a rejected or lapsed plea offer. *See Lee*, 137 S. Ct. at 1967.

In fact, our Court has applied *Lee*'s admonition in precisely that context. In *Walters v. Martin*, 18 F.4th 434 (4th Cir. 2021), like here, the defendant turned down a plea offer only to later plead guilty and receive a higher sentence. First, counsel let a plea offer with a 20-year sentence lapse without informing Walters, then Walters declined a plea offer with a 28-year sentence. *Id.* at 436–437. Ultimately, Walters accepted a plea agreement that dismissed some charges but left sentencing up to the court's discretion, and the court

27

sentenced him to 43 to 65 years' incarceration.[2]  *Id.* at 437–438.  Walters then sought habeas relief, claiming his counsel was constitutionally ineffective by failing to timely relay the first plea offer.  This Court concluded that Walters could not "establish prejudice because his claim fail[ed] on *Frye*'s first prong"—i.e., it was not reasonably probable that he would have accepted the plea offer had his counsel performed effectively.  *Id.* at 442.  We reached this conclusion by "reviewing the 'contemporaneous evidence to substantiate [Walters's] expressed preferences' at the time of the [first] plea offer."  *Id.* (quoting *Lee*, 137 S. Ct. at 1967).

Indeed, this Court considered itself bound to assess whether contemporaneous evidence substantiated Walters's claim rather than "'upset [his] plea solely because of *post hoc* assertions . . . about how he would have pleaded but for his attorney's deficiencies.'"  *Id.* at 442–443 (quoting *Lee*, 137 S. Ct. at 1967).  As we explained, Walters's "'self serving assertion that he would have accepted the plea is . . . the type of testimony . . . subject to heavy skepticism.'"  *Id.* at 443 (quoting *Merzbacher v. Shearin*, 706 F.3d 356, 367 (4th Cir. 2013)).  The fact that Walters ultimately took a deal that resulted in a longer sentence than the one included in the first plea offer was not sufficient to show he would have accepted the first plea agreement when it was offered.  *Id.* at 444.  Rather, "'to demonstrate a reasonable probability that he would have accepted a plea, a [defendant's] testimony that

---

[2] It is immaterial that Walters "ultimately received and accepted a plea deal," whereas Brown pled guilty to his entire indictment.  Maj. Op. at 14.  Both defendants claimed they would have accepted the earlier plea deals with effective assistance of counsel.

he would have done so must be credible.'"  *Id.* (quoting *Merzbacher*, 706 F.3d at 367). And "the 'contemporaneous evidence' . . . at the time of the [first] plea offer reflect[ed] he would not have accepted such an offer."  *Id.* at 442 (quoting *Lee*, 137 S. Ct. at 1967).

The majority is quite wrong, therefore, to declare that this Court has not "opined on 'contemporaneous evidence' . . . in the context of rejected plea offers."  Maj. Op. at 13. We plainly considered such evidence necessary in *Walters*.  And our ruling on that legal requirement was not at all affected by the AEDPA standard.  *See* Maj. Op. at 14–15 (attempting to distinguish *Walters* because it "originated in state court").  Moreover, in *Walters*, we explicitly "relied on *Lee*" in requiring the defendant "to present 'contemporaneous evidence' to support his claim that he would have accepted the government's plea offer"—the exact thing the majority faults the district court for doing here.  Maj. Op. at 11, 14.  One panel of this Court cannot overrule another, so *Walters* controls.  *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc).

For that reason, the majority's reliance on a decision from the Fifth Circuit—which also originated in state court and applied AEDPA review—is off base.  *See* Maj. Op. at 13 (citing *Anaya v. Lumpkin*, 976 F.3d 545 (5th Cir. 2020)).  Moreover, although the Fifth Circuit's discussion is broad, its relevant holding is narrower.  In that case, the State argued that the defendant's affidavits were not "competent evidence" because they were "non-contemporaneous."  *Anaya*, 976 F.3d at 554, 556.  The court rejected that argument,

29

concluding that the defendant's "unrebutted affidavit testimony" "could potentially satisfy part one of *Frye*'s prejudice test."[3] *Id.* at 554, 556.

In sum, Brown pled guilty and was sentenced on five counts and then asked the district court to "upset [his] plea" to four of those counts based on his "*post hoc* assertions . . . about how he would have pleaded but for [Wentz's] deficiencies." *Lee*, 137 S. Ct. at 1967. The district court did not err in considering whether "contemporaneous evidence" substantiated Brown's claim that, if Wentz had accurately explained his sentencing exposure, Brown would not have pled guilty without an agreement to all five counts but instead would have pled guilty only to count five pursuant to the plea agreement waiving his appellate rights. *Id.*

## III.

Considering all the evidence, the district court concluded that Brown had not carried his burden to prove the first *Frye* prong: "a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." 566 U.S. at 147. "In reviewing a district court's denial of a § 2255 motion, we review factual findings for clear error and legal conclusions de novo." *United States v. Slocum*, 106 F.4th 308, 312 (4th Cir. 2024). This Court "may not reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson v.*

---

[3] In addition, unlike Brown and Walters, the defendant in *Anaya* did not plead guilty but went to trial and lost. *See Anaya*, 976 F.3d at 549. Brown and Walters, therefore, concerned "convictions based on guilty pleas," *Lee*, 137 S. Ct. at 1967 (internal quotation marks omitted), while *Anaya* did not, *see* 976 F.3d at 555 (noting this distinction with *Lee*).

*Bessemer City*, 470 U.S. 564, 573 (1985).  And we afford "even greater deference" to a district court's findings when they are "based on determinations regarding the credibility of witnesses."  *Id.* at 575; *see United States v. Murray*, 65 F.3d 1161, 1169 (4th Cir. 1995) ("[I]t is the role of the district court to observe witnesses and weigh their credibility."). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Anderson*, 470 U.S. at 574.

A.

The district court did not err in concluding Brown failed to show a reasonable probability that he would have accepted the Government's plea offer.

The district court weighed and compared the testimony of three witnesses: Brown, Harper, and Wentz.  Attorneys Harper and Wentz "both testified that Brown did not want an appellate waiver in any plea agreement," and the court "credited the[ir] testimony." *Brown*, 2022 WL 4365708, at *3.  Further, the court took "judicial notice that the U.S. Attorney for the Eastern District of North Carolina would not have offered a plea agreement that did not have an appellate waiver," noting that, in eighteen years on the bench, the court had "never seen a plea agreement from the U.S. Attorney in this district without an appellate waiver."  *Id.*

By contrast, the court "declined to credit Brown's testimony" that he would have accepted the Government's plea agreement with an appellate waiver if he had known that pleading guilty to all five counts without an agreement exposed him to spending more than ten years in prison.  *Id.*  As the court explained, Brown was accurately informed at his plea hearing and at sentencing that he faced more than ten years' incarceration, yet he never

31

expressed disagreement, concern, or surprise over his sentencing exposure. Even after learning about Wentz's mistake from a fellow inmate, Brown did not tell his appellate counsel that Wentz failed to advise him accurately about his sentencing exposure or that he would have accepted the plea agreement had Wentz properly advised him. Instead, in his letter to appellate counsel, Brown referred to the fact that he would "not give up his appellate rights and accept a plea agreement," which the district court found to be consistent with Harper's and Wentz's testimony. *Id.*

Reconciling all the evidence, the district court found that "Brown's desire to avoid waiving his right to appeal was more important to Brown than his sentencing exposure." *Id.* Accordingly, the court found that, "even if Wentz had properly advised Brown about his sentencing exposure on counts one through five, . . . Brown would not have signed the . . . plea agreement with an appellate waiver and pleaded guilty to count five pursuant to the plea agreement." *Id.*

On appeal, Brown does not identify any clear error in the district court's factual findings or any basis for this Court to reverse the district court's credibility determinations or weighing of the evidence. Because the district court's view of the evidence is permissible, I would affirm. *Anderson*, 470 U.S. at 574.

B.

The majority reverses the district court without even acknowledging that court's factual findings and the deferential standard by which we review them. Instead, the majority pretends the district court "made no findings of fact" at all. Maj. Op. at 11. To the contrary, the magistrate judge heard conflicting testimony from three witnesses,

32

evaluated the credibility of that testimony in light of the full record, and decided disputed factual questions about Brown's thought process at the time he rejected the plea agreement and what he would have done in a counterfactual historical scenario.

The majority concludes that Brown would have accepted the Government's plea agreement because (1) "Brown testified at his evidentiary hearing" that he would have done so, and (2) "Brown pleaded guilty to more serious charges." Maj. Op. at 16–17. Despite not witnessing Brown's testimony, the majority accepts it, contradicting the district court's contrary assessment that it could not credit Brown's testimony. Similarly, the majority sets aside Harper's and Wentz's testimony that Brown's reason for rejecting the plea agreement was his refusal to waive his appellate rights. Yet the majority offers no justification for disagreeing with the district court's credibility determinations.

As for the remaining contemporaneous evidence, the majority simply ignores it. The majority does not address the evidence from Brown's plea hearing, sentencing, or appeal, despite its relevance and the district court's reliance on it. At no point does the majority weigh all the competing evidence in the balance.

There is no legal justification for turning a blind eye to the contemporaneous evidence. In a case with no contrary evidence or factual findings, a defendant might carry his burden by testifying that he would have accepted a plea offer if his attorney had not been deficient and showing that he later pled guilty "to a charge or sentence harsher than the original offer." *Frye*, 566 U.S. at 150. But "in some cases defendants must show more." *Id.* That is certainly the case where, as here, the evidence supplies reasons to doubt the defendant's "'self serving assertion that he would have accepted the plea.'" *Walters*,

33

18 F.4th at 443 (quoting *Merzbacher*, 706 F.3d at 367). And in *every* case the court must consider all the admissible evidence before it. The majority's ruling that Brown did not *need* to provide contemporaneous evidence to substantiate his claim cannot justify disregarding the evidence in the record.

In fairness, the majority does address one inconvenient contemporaneous fact: that Harper "properly advised Brown of the correct amount of time he was facing" before Brown rejected the Government's plea offer. Maj. Op. at 17. The district court did not rely on this fact. But it does seem to support the court's conclusion that, even if Brown were correctly advised about his sentencing exposure, he would have rejected the plea agreement. The majority rejects this fact as "insignificant" because Brown subsequently stopped trusting Harper. Maj. Op. at 3–4, 17–18. However, the question is not whether Brown liked his attorneys but whether he has shown a reasonable probability that he would have accepted the plea offer had he received correct counsel about his sentencing exposure. The fact that he *did* receive correct legal advice about his sentencing exposure and yet did not accept the plea offer strongly supports the district court's judgment that Brown failed to carry his burden.

I respectfully dissent.